83 N.J. Super. 323 (1964)
199 A.2d 673
TOWNSHIP OF SCOTCH PLAINS, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; PRESTON L. TALLEY, II AND HELEN K. TALLEY, HIS WIFE; HENRY A. MILNE AND IDA D. MILNE, HIS WIFE; EVERETT O. SIEGELE AND JESSIE S. SIEGELE, HIS WIFE; SARAH P. McINTOSH AND JOSEPH C. McINTOSH, HER HUSBAND; FREDERICK NEUMAN AND ROSLYN NEUMAN, HIS WIFE; RUSSELL N. CLARK AND MARGARET S. CLARK, HIS WIFE, PLAINTIFFS,
v.
TOWN OF WESTFIELD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT. THOMAS H. STOUDT AND KATHRYN H. STOUDT, HIS WIFE; RUDOLF BARUCH AND KATHERINE M. BARUCH, HIS WIFE; ELLIOT A. HALLER; STANLEY E. LUBECK, SR. AND MARILYN E. LUBECK, HIS WIFE; HAYWARD BEATTY; HAROLD J. SHAHNAZARIAN AND GLADYS SHAHNAZARIAN, HIS WIFE; JOHN DeTORRE AND DOROTHY W. DeTORRE, HIS WIFE; EMIL BAER AND BETTY BAER, HIS WIFE; JOSEPH F. NELSON AND MARTHA NELSON, HIS WIFE; LYNN F. WRIGHT AND DOROTHY WRIGHT, HIS WIFE; NORMAN W. HOUSTON AND BETTY S. HOUSTON, HIS WIFE; ROBERT C. MILL AND CLAUDIA MILL, HIS WIFE; AND GEORGE VILLA AND EILENE VILLA, HIS WIFE, PLAINTIFFS,
v.
TOWN OF WESTFIELD IN THE COUNTY OF UNION, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 7, 1964.
*327 Mr. Edward Sachar for plaintiffs Township of Scotch Plains et als. (Messrs. Sachar, Sachar & Bernstein, attorneys).
Mr. Fred G. Stickel, III for plaintiffs Thomas H. Stoudt et als. (Messrs. Stickel & Stickel, attorneys).
Mr. William F. Tompkins and Mr. Horace E. Baker for defendant (Messrs. Lum, Biunno & Tompkins and Mr. Horace *328 E. Baker, co-counsel; Mr. Theodore L. Abeles on the brief).
FELLER, J.S.C.
These are consolidated actions in lieu of prerogative writs brought by the Township of Scotch Plains, residents of that township and various residents of the Town of Westfield, against the Town of Westfield. In this action plaintiffs demand judgment setting aside an ordinance enacted by the defendant and permanently enjoining it from taking any action pursuant to the ordinance. The ordinance in question is entitled:
"An Ordinance Providing for the Construction of a Municipal Garage, accessory improvements and appurtenances, the appropriation of the monies necessary therefor, and the issuance of bond anticipation notes for the financing of said work."
It provides that a new municipal garage, accessory improvements and appurtenances be constructed on a portion of the premises known as Lot 1, Block 785, in the Town of Westfield. These premises are part of that area of Westfield known as Tamaques Reservation, a municipal park area, and are presently zoned for the highest one-family residential use  Zone "A."
The interest of the Township of Scotch Plains and of the residents of that township in the case arises from the fact that the site upon which the proposed municipal garage is to be located adjoins property within Scotch Plains. The latter property is also zoned residential by the Scotch Plains zoning ordinance.
The need for a new town garage is undisputed by the parties. The property upon which the former garage was located had been sold to Hahne & Co. in 1961 for use as a department store building site. The town has been without a municipal garage ever since and has been using temporary facilities in its stead. Shortly after the sale to Hahne & Co. the planning board conducted studies of various sites for the new garage. For various reasons which will be mentioned later, several locations within the town were rejected and finally the site in *329 dispute was chosen. Plaintiffs then brought this suit challenging the actions of the Town of Westfield. They contend that the action of the town is illegal for various reasons which may be summarized as follows:
(1) The proposed site is not within the Town of Westfield;
(2) The proposed use would violate Westfield's own zoning ordinance;
(3) If the property is within Westfield and if the proposed use is allowed by Westfield's zoning ordinance, plaintiffs are denied the equal protection of the laws guaranteed by the Fourteenth Amendment of the United States Constitution and Article I of the New Jersey Constitution;
(4) The proposed use would constitute a nuisance;
(5) The proposed use would violate a previous stipulation between Scotch Plains and Westfield;
(6) The proposed use would constitute an arbitrary, capricious and unreasonable act.

I.
The property upon which the town garage is to be constructed is part of Lot 1, Block 785, as laid out and delineated on the tax map of the Town of Westfield. This same property was a part of the Township of Fanwood (now Scotch Plains) prior to 1915. At that time, in response to a resolution of the governing body of Westfield, the Legislature enacted legislation annexing this land to Westfield. The act of annexation is chapter 270 of the Laws of 1915. It is the contention of plaintiffs that this legislation was defective, and that Lot 1, Block 785, never became a part of Westfield, and presumably they contend that it still remains a part of what is now Scotch Plains. Seemingly, this is the first time this legislation has been attacked in a period of some 48 years. The exact basis of their contention that L. 1915, c. 270, is defective is that the beginning point of the annexation, as described in the act, is "Rahway road." Since it is apparent that there is no such street in the vicinity, plaintiffs contend that the annexation is inaccurately described and uncertain, thereby rendering it defective. Plaintiffs further argue that the act of annexation should be complete and exact on its face, and that extrinsic evidence should not be used to determine the land annexed.
*330 The parties have evidently felt that N.J.S.A. 40:43-67 et seq. is not applicable here. The above statute provides that in case of disputed municipal boundaries the matter may be referred to a commission by the court. The court agrees that this statute is inapplicable in the instant suit since we are here confronted not so much with a boundary dispute as with the validity of an act of the Legislature. This latter matter is properly a judicial function rather than a quasi-judicial one.
Furthermore, the court agrees with plaintiffs that a certain exactitude in setting up municipal boundaries is required. See Durning v. Board of Elections of Portage County, 174 N.E.2d 287 (Ohio Ct. App. 1960). However, it remains to be seen just what degree of certainty suffices. Before this is done it might be helpful to inquire into plaintiffs' status to raise this point. Various courts have "nonsuited" parties raising similar points, on the ground of laches, State ex rel. Landis v. Town of Boca Raton, 129 Fla. 673, 177 So. 293 (Sup. Ct. 1937), or estoppel, State ex rel. Landis v. City of Coral Gables, 120 Fla. 492, 163 So. 308, 101 A.L.R. 578 (Sup. Ct. 1935). In addition, it is generally held that an annexation proceeding is not subject to collateral attack unless the proceedings were absolutely void. Town of Coushatta v. Valley Electric Member Corp., 139 So.2d 822 (La. Ct. App. 1961); Village of Lynbrook v. Cadoo, 252 N.Y. 308, 169 N.E. 394 (Ct. App. 1929), reargument denied 252 N.Y. 617, 170 N.E. 165 (Ct. App. 1930). The above bars to bringing suit seem to be more readily applied when a considerable period of time has elapsed after the boundaries have been set. McQuillin, Municipal Corporations (3d ed.), sec. 7.41, p. 375. However, rather than applying any of the above, it would seem that as the question has already been presented to the court and argued by the parties, the most reasonable disposition will be to base the decision on the annexation act itself, since it is evident there is no merit to the claim that it is defective.
*331 As was said previously, municipal boundaries should be described with such certainty as to render it possible to determine the precise area intended to be included within the municipal bounds. But the law does allow ambiguities in the description of municipal boundaries, for we know that such descriptions are not to be construed with the same strictness as those outlining the boundaries in grants or contracts. Ross v. Mayor and Council of Borough of Edgewater, 115 N.J.L. 477 (Sup. Ct. 1935); McQuillin, Municipal Corporations (3d ed.), sec. 7.05, pp. 261-262.
It is also stated in McQuillin, sec. 7.05, at p. 262:
"In ascertaining the municipal boundaries, due weight should be given to the contemporaneous interpretation of the courts and other lawful authorities and by the population at large. Maps published by authority of law may be referred to as evidence."
This court takes this to indicate that evidence extrinsic to the act of annexation itself may be examined, if necessary, to determine the exact boundaries. Moreover, the statute annexing part of Fanwood to Westfield must be read with a view to determining the legislative intent, if possible, and not with a view to rendering it null and void if minor inaccuracies are found. 82 C.J.S. Statutes, § 342, p. 685; McQuillin, Municipal Corporations, sec. 7.05, p. 262. A sensible rather than a literal reading of legislation is called for, unless the literal wording is so compelling as to evince a clear legislative design. Schierstead v. City of Brigantine, 29 N.J. 220 (1959).
This court is convinced, after having studied all the evidence, that the road referred to in L. 1915, c. 270, is the road presently known as Lamberts Mill Road. The various exhibits have shown that this road has been known in the past as "Radley Road," "Raritan Road," "Raritan Road or Lamberts Mill Road," and "Rahway Road." The basis for the use of "Rahway road" in L. 1915, c. 270, is quite apparent. Pursuant to a resolution of the governing body of Westfield instructing the town attorney and town surveyor to draft a bill *332 for submission to the Legislature providing for the annexation of a certain tract then lying within the Township of Fanwood, a map was prepared outlining the tract to be annexed. This map was prepared in January 1915, before L. 1915, c. 270, was passed. On it the then present boundary line, now known as Lamberts Mill Road, is noted as being "Rahway Rd." in quotation marks, just as appears in the statute. In addition, the courses and distances shown on the map are exactly those included in the statute (except the directions of the courses are reversed). The similarities between the map and the statute lead to the conclusion that the figures used in the 1915 act were derived from the map or an accompanying draft of the proposed legislation.
The question thus arises as to whether the use by the Legislature of the term "Rahway road," when the road is presently known as Lamberts Mill Road, makes the annexation defective. The court holds that it does not. This holding is based upon alternative premises: (1) if the road was officially known as Rahway Road in 1915 when the property was annexed, the Legislature was perfectly correct in referring to it as "Rahway road" in the act, and the mere change of name from then to now has no effect upon its validity; (2) if the road was officially known as Lamberts Mill Road in 1915 and popularly known as "Rahway road," then the use of the popular terminology does not affect the validity of the act since the intent of the Legislature may still be determined.
The strongest proof that the terminology used accurately set out the boundary of Westfield is the fact that the boundary as established has stood without question for a period of 48 years, and has been acquiesced in by all parties to this suit for that period of time. See McQuillin, Municipal Corporations, sec. 7.09, p. 274. Since the annexation act sufficiently describes the property annexed, it is the opinion of this court that L. 1915, c. 270, is not defective and that the property was properly annexed to the Town of Westfield and is presently part of that municipality.

*333 II.
Article VI, section 1 of the Westfield zoning ordinance lists the uses which are permissible within a Residence "A" Zone. Section 1(b) states that permissible structures include:
"(b) A church, school (other than a regular private school), public building, public park or public playground." (Emphasis added)
Plaintiffs contend that the meaning of the words "public building" must be construed in conformity with the intent and purposes of Article VI, which is to create a residential zone. In view of this intent, "public building" must necessarily be construed to mean something in the nature of a library or museum. At any rate, these words should not be defined to include a town garage. Defendant, on the other hand, argued that the words define themselves and presumably include all buildings owned and operated by the municipality.
Black's Law Dictionary defines "public building" to be:
"* * * Any building held, used, or controlled exclusively for public purposes by any department or branch of government, state, county, or municipal, without reference to the ownership of the building or of the realty upon which it is situated. * * * A building belonging to or used by the public for the transaction of public or quasi public business. * * *"
Certainly, the proposed use involved here is to be "held, used or controlled exclusively for public purposes." Public interest in the maintenance of municipal roads and parks cannot be denied.
Furthermore, a reading of Washington Twp. v. Ridgewood Village, 26 N.J. 578 (1958), indicates that the intention of our Supreme Court is to restrict the distinction between governmental and proprietary functions to cases of municipal tort liability and not to inject it in controversies of this type. In that case the court said:
*334 "We cannot agree that the distinction between governmental and proprietary functions is relevant to this controversy. The distinction is illusory; whatever local government is authorized to do constitutes a function of government, and when a municipality acts pursuant to granted authority it acts as government and not as a private entrepreneur. The distinction has proved useful to restrain the ancient concept of municipal tort immunity, not because of any logic in the distinction, but rather because sound policy dictated that governmental immunity should not envelop the many activities which government today pursues to meet the needs of the citizens. Cloyes v. Delaware Township, 23 N.J. 324 (1957). We see no connection between that classification and the problem before us. Surely the supply of water cannot be deemed to be a second-class activity in the scheme of municipal functions. Nor is it significant that the municipality serves areas in addition to its own, for from the nature of the subject, cooperative action among municipalities is imperative and consonant with the governmental nature of the activity." (at p. 584)
The court, furthermore, cannot agree with plaintiffs' contention that the special use section (article VI, section 2) of the Westfield zoning ordinance prohibits the use contemplated here. That section recites that certain designated uses may be constructed in a Residence "A" zone if board of adjustment approval is gotten. These uses include "public utility buildings or structures except storage yards or garages, or work shops." (Emphasis added) It is clear that the italicized restriction does not relate to the permitted uses of section 1 (including public buildings), but rather to the use which it modifies  public utility buildings or structures.
Therefore, it is the opinion of this court that the phrase "public buildings" includes a municipal garage facility, and that the restriction contained in section 2 does not pertain to the uses allowed under section 1.
Even if the terms of the zoning ordinance prohibited the construction of a municipal garage, under generally accepted principles of law which have been repeated recently by our courts, the municipality could disregard the ordinance and erect a municipal building if it was necessary. In Thornton v. Village of Ridgewood, 17 N.J. 499 (1955), it was said:
"There is authority to the effect that municipal officials usually comply with, and should be the first to obey, the requirements of the *335 municipal zoning ordinance. Bassett, Zoning (1940), pp. 31, 212. However, it is said, `The need of a public building in a certain location ought to be determined by the federal, state, or municipal authority, and its determination on the question of necessary or desirable location cannot be interfered with by a local zoning ordinance * * *.' Id., p. 31, cf., Id., p. 212." (at p. 513)
The fact that the zoning ordinance prohibited the proposed use would be of no consequence under the above cited authority.
Since it is the opinion of this court that the Westfield zoning ordinance permits the construction of a municipal garage in a residentially zoned area, we must now deal with the question of whether this results in a violation of the equal protection guarantees of the United States Constitution (Fourteenth Amendment) and the New Jersey Constitution (Article I). It is plaintiffs' contention that a classification which would allow public buildings in a residential zone, while excluding such uses by private individuals, would be based upon a feigned difference and would be violative of the constitutional provisions cited above. Thus it seems that plaintiffs are attacking the Westfield zoning ordinance in general, rather than its application in this situation.
It is true that restrictions on land use must be general and uniform within a particular zone, and that classifications must be founded on real and not feigned differences. Rockhill v. Chesterfield Tp., Burlington, 23 N.J. 117 (1957). The equal protection clause secures equality of right by forbidding arbitrary discrimination between persons similarly circumstanced. This principle bars invidious discrimination. Schmidt v. Board of Adjustment of Newark, 9 N.J. 405 (1952). Classification is not arbitrary or discriminatory in the invidious sense if it bears a reasonable and just relation to the service of the general welfare. Ibid, at p. 422. Furthermore, if the classifications in a zoning ordinance are fairly debatable, the court will not interfere. Thornton v. Village of Ridgewood, supra; Yanow v. Seven Oaks Park, Inc., 11 N.J. 341 (1953); Gilman v. Newark, 73 N.J. Super. 562 (Law Div. 1962); Euclid v. Ambler Realty Co., 272 U.S. *336 365, 47 S.Ct. 114, 71 L.Ed. 303 (Sup. Ct. 1926). It has been held that distinctions between municipal and private property or activities constitute a reasonable classification for zoning. McCarter v. Beckwith, 247 App. Div. 289, 285 N.Y.S. 151 (App. Div. 1936). Again, it has been held that a zoning ordinance may exempt municipal buildings from zoning restrictions. City of Cincinnati v. Wegehoft, 119 Ohio St. 136, 162 N.E. 389 (Sup. Ct. 1928). This view seems to have been adopted by the courts of this State in Thornton v. Village of Ridgewood, supra. There the court, 17 N.J., at page 513, pointed out the existence of authority for a municipality's disregarding its own zoning ordinance when a public building was needed in a particular location. If it could construct a building prohibited by its zoning ordinance, it could certainly provide for the inclusion of public buildings within the residential use section of its zoning ordinance. But the opinion here need not rest upon such ground. For in Thornton, supra, the Supreme Court answered the same contention raised here as to improper classification, saying:
"It was asserted by the plaintiff that the use of a building in a residential zone for the purpose of municipal government administration is contrary to the zone plan and the theory of the zoning statute, and therefore is an improper classification. This argument cannot prevail. If the municipality were completely residential no one would say that the use of its municipal offices would be incompatible. Where, as here, the municipality is not entirely residential the most that can be said against the use in a residential zone contemplated by section 4 of Ordinance No. 993, ante, and proposed to be made of the Elks premises purchased by the village, is that the classification is fairly debatable. Where such a condition is disclosed, the legislative judgment must prevail." (at pp. 514-515, emphasis added)
In view of the law as stated above, this court is of the opinion that the zoning ordinance of Westfield, insofar as it permits public buildings in a residential zone, is based upon a reasonable classification. Therefore, there is no arbitrary discrimination between persons similarly circumstanced, and no violation of either the Fourteenth Amendment to the United *337 States Constitution or Article I of the New Jersey Constitution.

III.
Immediately upon the presentation of this question we may disregard the notion that the proposed use constitutes a nuisance per se, which is defined as "an act, occupation or structure which is a nuisance at all times and under all circumstances, regardless of location or surroundings." Priory v. Borough of Manasquan, 39 N.J. Super. 147 (App. Div. 1956). Certainly, a municipal function which renders a public service would not come within this classification. On the other hand, the operation of the town garage may involve the maintenance of a nuisance per accidens, even though such use is permitted by the zoning ordinance of Westfield. Kozesnik v. Montgomery Tp., 24 N.J. 154 (1957).
Plaintiffs argue that the operation of the town garage is an industrial one; that it involves the continuous loading and unloading of construction materials; that storms necessitate its operation 24 hours a day; that such an operation involves loud noise, dust and dirt to an extent where they cause unreasonable interference with the rights of homeowners in the immediate vicinity of the proposed site; and that the operation of the town garage will create a very large additional volume of traffic on surrounding streets. They conclude from the foregoing that the operation of the garage will constitute a private, if not a public, nuisance. At trial these allegations were disputed by defendants. It was testified that the site was several hundred yards from neighboring homes; that buffering would conceal it from the view of these homes; that any noise incident to its operation would not travel further than 500 feet, and that the building itself was to be of colonial structure and an excellent building with good aesthetics. Balancing the various contentions, this court is of the opinion that plaintiffs have not sustained their burden of showing by clear and convincing evidence that the operation of the garage will constitute a nuisance.
*338 In plaintiffs' brief heavy reliance is placed on Sans v. Ramsey Golf & Country Club, Inc., 29 N.J. 438 (1959). That case involved a claim that the operation of certain parts of a golf course constituted a private nuisance. The court there said:
"Litigation of this type usually deals with the conflicting interests of property owners and the question of the reasonableness of the defendant's mode of use of his land." (at p. 449)
In other words, the process of adjudication requires recognition of the reciprocal right of each owner to reasonable use and a balancing of the conflicting interests. The utility of a defendant's conduct must be weighed against the quantum of harm to the plaintiffs. The question is not whether a person is annoyed or disturbed, but whether the annoyance or disturbance arises from an unreasonable use of the neighbor's land or operation of his business. Sans v. Ramsey Golf & Country Club, supra; Prosser on Torts (2d ed. 1955), p. 410. From the above it appears that it is not the use of one's land that may be reviewed by the courts, but rather the mode of the use chosen by defendant. In other words, this court does not feel that defendant may be prohibited from using its land for a town garage, on the ground of nuisance. However, operation of the garage, if unreasonable, may later be reviewed by the courts, based upon the complaint of one aggrieved by such use. To arbitrarily prohibit the contemplated use would ignore the recognized principle that every person is entitled to use his property for any purpose that he sees fit, while at the same time being bound to use his property in such a manner as not to injure the property or rights of his neighbor. Furthermore, if this court were to restrain the proposed construction, it would impliedly involve a finding that a town garage could not be operated here without being a nuisance. Plaintiffs have failed to prove that this is so. In the absence of such proof, the courts refuse to grant an injunction against construction, leaving the question of nuisance *339 to await the operation of the business. Oechsle v. Ruhl, 140 N.J. Eq. 355 (Ch. 1947).
This court will therefore refuse to enjoin the proposed construction, leaving plaintiffs the remedy of a suit based on nuisance if subsequent operations prove to be such.

IV.
A prior proceeding between the Township of Scotch Plains and the Town of Westfield (Docket L-4509-59 P.W.) was dismissed after the following stipulation was entered into:
"WHEREAS, the Town of Westfield has adopted an Ordinance amending its Zoning Ordinance eliminating the map referred to in section 4 of said Zoning Ordinance 871, Lot 1, Block 785, which tract is contiguous and borders on Scotch Plains,
WHEREAS, it is agreed that said Lot 1, Block 785, shall not be rezoned for industrial purposes unless and until there is a substantial change in the neighborhood, reserving the right however, on the part of the plaintiffs to oppose any change by suit or otherwise,
It is on this 5th day of February, 1960, Stipulated by and between the attorneys for the respective parties, that the above entitled suit be and the same is hereby dismissed without cost to either party."
It is clear from a reading of this stipulation that the contemplated action of Westfield would in no way involve a violation of its terms.
Since the zoning ordinance of Westfield permits the use proposed, no rezoning is necessary. The action being taken is in accordance with the ordinance as it stood at the time the stipulation was entered into.

V.
Two points which are worthy of note should be mentioned immediately. First, the body seeking to build upon the premises involved is a public body and not a private individual or organization. When public interest is involved, the results reached in a particular case might differ from where the rights of a private property owner were involved. This view is implied in that body of law which holds that a municipality, *340 acting in the public interest, may not be bound by its own zoning ordinance, whereas a private individual would. See Thornton v. Village of Ridgewood, supra, 17 N.J., at p. 513; Bassett, Zoning (1940), pages 31, 212. The second point worthy of note is that defendant here is not seeking a variance or to amend its own zoning ordinance in order to construct the proposed use. Rather, it is merely seeking to construct a use which is in full legal compliance with its zoning ordinance.
Realizing that these factors preponderate in favor of the proposed municipal action, we may inquire as to whether there are any restraints placed upon their power in this respect. This question has been answered in Washington Twp. v. Ridgewood Village, supra. In that case the action of the Village of Ridgewood in erecting a water tank on land located partially in Ridgewood and partially in the adjacent Borough of Ho-Ho-Kus was contested. The land upon which the water tank was erected was zoned by both Ridgewood and Ho-Ho-Kus so as to prohibit such a use if proposed by a private individual. The court found that the Ridgewood ordinance would not bar the proposed use since its terms exempted "Any municipally owned or operated building, structure or use." The court then went further and held that the zoning ordinance of Ho-Ho-Kus would not be binding on Ridgewood in the use of property as part of a water supply system. Admittedly, this holding was based upon the statutory power enabling municipalities to purchase, condemn or otherwise acquire land within or without the municipality for the purpose of providing a water supply. See R.S. 40:62-49 et seq.
The court went on to say that even though Ridgewood was empowered to construct such a structure  in compliance with its own zoning ordinance, and in disregard of Ho-Ho-Kus'  it was required to act reasonably in the exercise of its authority. This, then, is the test of the validity of its action. However, the contemplated use is not to be judged on its reasonableness in respect to adjacent land owners, or by the fact that construction is contemplated in a residential *341 zone. To judge it unreasonable on these criteria could involve denying the municipality a vital public service. The test is, rather, whether a "reasonable alternative" has been rejected by the municipality. See 13 Rutgers L. Rev. 78, 80. If so, its action is arbitrary and may be voided. Thus, it is the opinion of this court that our main inquiry is not as to the effect of the proposed use upon the surrounding area, but rather whether a reasonable alternative, more in conformity with the general zoning plan, was arbitrarily rejected. In connection with the foregoing it must be remembered that the decision of where to place the town garage was for the governing body to make in the exercise of its discretion, and this decision may only be overturned if it resulted from an abuse of discretion. Furthermore, the burden of proving unreasonableness is upon one who attacks an ordinance, Monmouth Lumber Co. v. Ocean Tp., 9 N.J. 64 (1952), and the proof of unreasonableness must be beyond debate, Vickers v. Tp. of Gloucester, 37 N.J. 232 (1962).
When Westfield decided to construct a new town garage, the planning board was asked to commence a study as to possible sites. Subsequently, three sites were suggested by the planning board. They are as follows:
1. South Avenue east of Central Avenue  Lots 6 and 70, Block 503 on Westfield tax map.
2. Boynton Avenue, Myrtle Avenue, Grove Street area.
3. Hancock Street, Hort Street, North Marion Avenue area.
In answer to plaintiffs' interrogatory No. 18(a) asking why these locations were rejected, defendant states (numbers below correspond to numbers above):
"1. Owner, Arthur Venneri Realty Co., refused to sell to defendant and threatened to resist condemnation vigorously, if commenced. Title also complicated by litigation commenced by Central R.R. Co. of N.J. v. owner for specific performance of contract. Because of shortage of time for acquiring new Town Yard site and possibility of lengthy litigation over this site, defendants decided to look for another site.
2. Too small in area.
3. Council decided area was better located for park recreation development, which was badly needed in that district." *342 These were the only alternatives open to Westfield for town garage purposes. When they were rejected, the town council turned to the Lamberts Mill Road site which is the subject matter of this suit. The planning board gave its qualified approval to this choice, contingent upon certain land in the North Scotch Plains area being used for a park and recreational area.
The South Avenue site mentioned above is located in an area zoned for commercial and industrial uses, and comprises approximately five acres. The reasons given why this property was not suitable were the resistance of the owner to condemnation; that this property was presently the subject matter of litigation; its acquisition would remove a substantial ratable from the tax rolls of the town, and the cost of acquisition would be high, the property being appraised at $165,000 by Alton Van Horn, realtor. On the other hand, the Lamberts Mill Road property was presently owned by Westfield, thereby making a cash outlay for land unnecessary.
The Boynton Avenue site comprised approximately 2.5 acres and was located partially in a business zone and partially in a residential zone. It was rejected as inadequate in size. The Hancock Street site was rejected because the council felt that that area was more suitable for park recreational development, which was badly needed in that district. No figures as to size, present ownership, appraisal value or present zoning were brought to the court's attention. All of the above was corroborated in substance by the testimony.
After having studied the proposed alternatives, this court is of the opinion that it cannot be said that the Westfield town council abused its discretion in choosing the Lamberts Mill Road site for the contemplated town garage. Certainly, the rejection of the Boynton Avenue site because of its inadequate size, taking into consideration future needs, was proper. Furthermore, its decision that the Hancock Street site was better suited for park recreation development was again within its discretion, since the council is ultimately responsible for proper municipal planning. The South Avenue site would *343 involve a condemnation proceeding, which in itself could delay the town's plans for years and in the end increase the cost to exorbitant heights. The Washington Twp. case differs from this case in that there the governing body did not consider the alternatives proposed. Here such consideration was given, but for various reasons which, in the opinion of this court, involved no abuse of discretion, all of the alternative sites were rejected.
It is true that the council's decision will result in an intrusion upon a residential area. However, as pointed out by defendant, since Westfield is zoned approximately 97% residential, the chances are great that any decision would affect some residential area in a similar manner. Furthermore, the proposed site, as observed by the court, was concealed from all but a few of the homes in the area by large trees and the curve of the road. Westfield has given assurances that the building, by reason of design and buffering, will blend in with the area. This seems to be indicated by the sketch submitted. If some residents are still inconvenienced by the location of the contemplated use, it must be remembered that rights in land must give way to greater needs of the community, implemented by a reasonable exercise of the police power. Levin v. Livingston Twp., 62 N.J. Super. 395 (Law Div. 1960), affirmed in part, reversed in part 35 N.J. 500 (1961).
In Kozesnik v. Montgomery Twp., 24 N.J. 154 (1957), the court stated:
"The zoning statute delegates legislative power to local government. The judiciary of course cannot exercise that power directly, nor indirectly by measuring the policy determination by a judge's private view. The wisdom of legislative action is reviewable only at the polls. The judicial role is tightly circumscribed. We may act only if the presumption in favor of the ordinance is overcome by a clear showing that it is arbitrary or unreasonable. Schmidt v. Board of Adjustment of City of Newark, 9 N.J. 405, 416 (1952); Cobble Close Farm v. Board of Adjustment of Middletown Tp., 10 N.J. 442, 451 (1952); Yanow v. Seven Oaks Park, Inc., 11 N.J. 341, 360 (1953); Pierro v. Baxendale, 20 N.J. 17 (1955)." (at p. 167)
*344 In LaRue v. Township of East Brunswick, 68 N.J. Super. 435, 457 (App. Div. 1961), the court stated that the legislative process, whatever its shortcomings, is designed to produce beneficial and farsighted regulatory social codes by means of the votes of intelligent and devoted democratic leaders. If the product falls far short of this goal, there may at times be recourse to the courts, but if merely the competence of the producer is at issue, the exclusive remedy lies at the polls.
This finding as to the reasonableness of the proposed use applies alike to plaintiff Scotch Plains, since an adjacent municipality is entitled to only the same consideration as is due residents of the municipality contemplating the improvement. Borough of Cresskill v. Borough of Dumont, 15 N.J. 238 (1954).
Since it is the opinion of this court that the Town of Westfield acted reasonably in the exercise of its authority, it follows that its action in locating the contemplated use will be sustained.
A judgment in accordance with this opinion, duly consented to as to form or settled upon notice pursuant to R.R. 4:55-1, will be submitted to the court.