PUBLIC COMPETITIVE BIDDING The provisions of House Bill No. 1665 of the Second Regular Session of the Thirty-fourth Legislature do not apply to the awarding of contracts by an industrial public trust created under 60 O.S. 176 [60-176] (1973), et seq., for the construction of private industrial manufacturing plants to be leased to a private commercial user or the purchase and installation of equipment in such a plant. The Attorney General has considered your opinion request wherein you set forth the following facts: An industrial public trust authority duly created, existing and operating pursuant to the provisions of Title 60 O.S. 176 [60-176] (1971), et seq., proposes to construct and equip an industrial manufacturing plant to be leased to a private commercial user for the public purposes of fostering economic growth and providing increased employment opportunities for the residents of the beneficiary of said industrial public trust authority, a county. The industrial public trust authority will provide partial financing for the constructing and equipping of said industrial manufacturing plant by issuing special obligation bonds or notes payable solely from the revenues derived from the leasing of said industrial public trust authority to the private commercial user who will have an option to purchase the industrial manufacturing plant for a nominal sum after all indebtedness issued by the industrial public trust authority has been retired. You then ask, in effect, the following questions: 1. Do the provisions of the "Public Competitive Bidding Act of 1974", House Bill No. 1665, Chapter 298, Thirty-fourth Legislature, Second Regular Session, 1974, apply to the awarding of a construction contract by an industrial public trust authority created pursuant to 60 O.S.Supp. 1973, 176, et seq., for the construction of an industrial manufacturing plant to be leased to a private commercial user? 2. Do the provisions of the "Public Competitive Bidding Act of 1974" apply to the awarding of contracts for the purchase of equipment and the installation thereof in said private industrial manufacturing facility by an industrial public trust authority? House Bill 1665, enacted by the 1974 Legislature, provides requirements and procedures for competitive bidding on public construction projects being built by public agencies. Public agency, as defined in Section 2, Paragraph 3, includes "any public trust". Paragraph 4 of said section defines public construction contracts and provides: " 'Public construction contract' or 'contract', means any contract, exceeding Two Thousand Five Hundred Dollars ($2,500.00) in amount awarded by any public agency for the purpose of making any public improvements or constructing any public building or making repairs to the same." A reading of Section 2, Paragraphs 3 and 4 together would indicate that public competitive bidding pursuant to the provision of the Act is required whenever any public trust proposes to award a contract for the construction of any public improvement or any public building. The Legislature could have provided simply that any construction contract to be entered by any public trust be subject to public competitive bidding; instead it limited the coverage of the Act to contracts for the construction of any public improvements or any public building. Therefore, it appears that a reading of Section 2, Paragraphs 3 and 4 together would indicate that a public trust could construct other than a "public building", otherwise there would be no need to define the type of construction contract, i.e. "public building", contemplated by the Act as in Section 2, Paragraph 4. While the Oklahoma courts have not expressly construed the phrases "public building" or "public improvement", the Oklahoma Supreme Court decisions construing statutes containing the same words refer to buildings or improvements serving, occupied or used by the general public. Hutchinson v. Krueger, 34 Okl. 23, 124 P. 591. The phrase "public building" has generally been construed to mean a building which is used, operated, maintained, controlled, or in the possession of the public or used by the public for the transaction of public or quasi public business. Green v. State, 186 N.W.2d 792, 30 Mich. App. 648; People v. Martinez, 250 N.Y.S.2d 28, 43 Misc.2d 94; Scoth Plains Tp. v. Town of Westfield, 199 A.2d 673,83 N.J. Super. 323. As you relate in your opinion request, an industrial trust created pursuant to 60 O.S. 176 [60-176] (1973), et seq., is concerned with the construction of industrial facilities to be leased to a private commercial user. The facility, while being owned by the trust authority, is exclusively in the control and possession of such private commercial user and is not operated, maintained, occupied or used by, and does not serve the general public. Although an industrial facility is constructed for a "public purpose" the facility itself is a private building rather than a "public building". The dual public purposes supporting industrial revenue financing by public trust authorities are: (1) promoting economic growth, and (2) providing increased employment opportunities for the residents of the beneficiary. These public purposes are accomplished by attracting private industrial concerns to locate or expand in or near the beneficiary through the utilization of the public trust industrial revenue financing. Title to the facility is indeed normally held by the industrial public trust authority during the time in which its revenue bond indebtedness is outstanding to allow the trust to grant a mortgage and security interest as security for the bondholders; however, in almost all situations the private industrial concern has an option to purchase the facility for a nominal sum after the retirement of all indebtedness by the private concern and thus has equitable ownership of the facility during the debt term. During the time the indebtedness is outstanding the private concern is occupying and operating the facility as a lessee or installment sale purchaser in the conduct of its business and is, of course, entitled to exclusive possession and control of the facility; therefore, the facility neither is open to, nor does it provide goods or services for, the general public. It is apparent that the Legislature did not intend to include industrial projects within the purview of the Act since the abuses attempted to be abrogated by the Act are not present in the financing and awarding of contracts for construction of private industrial buildings. The plans and specifications for the facility are conceived, designed and implemented by the private industrial concern in accordance with its particular business needs; the industrial trust authority has no real interest in the type of facility to be constructed so long as it is suitable for the needs of the private concern. In fact, industrial public trusts without exception make disclaimer of any and all responsibility for the suitability or fitness for the industrial facilities and place the responsibility of accepting the same on the private concern. The private industrial concern is also greatly concerned with the cost of the facility because the private concern alone is responsible for paying the cost of the project through the payment of rentals equal to the debt service requirements on the revenue indebtedness. The funds for constructing industrial facilities are obtained from the issuance of special "revenue" obligations secured by a mortgage on the project facility and a pledge of the revenues received by the public trust pursuant to the Lease Agreement or other document between the public trust authority and the private industrial concern. Under no circumstances may the bondholders look to the public trust authority, the city, county or any other public body for payment of the bonds, the payments on the bonds being the sole responsibility of the private industrial concern. One exception to the foregoing rationale is that trusts created pursuant to the Local Industrial Development Act are specifically made subject to the competitive bidding requirements. In so doing, the Legislature clearly expressed the intent to not require other industrial trusts to be subject to the competitive bidding requirements. In so doing, the Legislature clearly expressed the intent to not require other industrial trusts to be subject to the provisions of the Act, the obvious reason for the distinction being that the Local Industrial Development Act authorizes the expenditure of funds of municipalities and counties for the furtherance of industrial development, whereas other public trusts depend solely upon the private industrial concern for payment of the indebtedness. While House Bill 1665 does not require that industrial public trusts comply with the competitive bidding requirements set out therein, said trusts have the authority under their trust indentures to require competitive bidding in the letting of contracts. In regard to your second question, House Bill 1665 applies to those contracts awarded by a public agency for the purpose of making public improvements, building public buildings or making repairs to same. The purchase and installation of equipment is neither the construction of a public building or the making of repairs to same, nor is it a public improvement. An improvement, generally speaking, is anything that enhances the value of land; a valuable addition made to real property. Mazel v. Bain, 133 So.2d 44. It is, therefore, the opinion of the Attorney General that your questions be answered in the negative. The provisions of House Bill No. 1665 of the Second Regular Session of the Thirty-fourth Legislature do not apply to the awarding of contracts by an industrial public trust created under 60 O.S. 176 [60-176] (1973), et seq., for the construction of private industrial manufacturing plants to be leased to a private commercial user or the purchase and installation of equipment in such a plant. (Mike D. Martin)