921 A.2d 1169 (2005)
392 N.J. Super. 593
HILLS OF TROY NEIGHBORHOOD ASSOCIATION, INC., Plaintiff
v.
TOWNSHIP OF PARSIPPANY-TROY HILLS, Omnipoint Communications, Inc. and Sprint Spectrum, L.P., Defendants.
Superior Court of New Jersey, Law Division, Morris County.
October 28, 2005.
*1170 Ira E. Weiner, for plaintiff (Azrak & Associates, Attorneys).
Paul F. Campano, Morristown, for defendant Township of Parsippany-Troy Hills (Dillon, Bitar & Luther, attorneys).
Joseph A. O'Neill, for defendants Omnipoint Communications, Inc. and Sprint Spectrum, L.P. (Garafalo Zierak O'Neill, attorneys).
BOZONELIS, J.
Plaintiff Hills of Troy Neighborhood Association, Inc. seeks to enjoin the construction of a municipal communications and telecommunications tower to be shared by the Township of Parsippany *1171 Troy Hills with Sprint Spectrum, L.P., and Omnipoint Communications, Inc. The matter presents issues on the extent to which a municipality is exempt from its own zoning approval ordinances, the reasonable exercise of such authority and, to the extent so exempt, the novel question of whether private telecommunication companies may share in that exemption by co-locating on a communications tower on municipal property.
Parsippany sought the reconstruction of its police station at 3339 Route 46 East. As part of its plan, the Township is to replace the previous tower and arrange for the construction of a new municipal communications tower to be located at the rear of the police station. The tower is to be used by the Township for police, fire and other emergency and essential municipal services. In this regard, the Township determined to lease a portion of the municipal police station property to a telecommunication service provider for cellular telephones with the provider constructing the tower at no cost to the Township, co-locating its wireless telecommunication facilities on the tower and paying rent to the Township for such use.
The Township advertised for sealed bids for the lease and construction of a tower with a lattice design. In accordance with published bid procedures, on June 22, 2004, Omnipoint Communications, Inc. was awarded the right to reconstruct a police communications lattice tower to also include a wireless telecommunications facility at the Police Headquarters. A lease was entered into on July 14, 2004 pursuant to the bid terms. Prior to the opening of the bid, the plans for the replacement police lattice tower were subject to a "courtesy review" by the Parsippany-Troy Hills Planning Board on June 14, 2004.
The original bid and lease documents provided for a 150 foot tower and related ground equipment to be placed behind the new Police Headquarters with Omnipoint and Sprint antennas. Lead position for construction of the tower was transferred from Omnipoint to Sprint by an assignment dated November 10, 2004. Under the lease, Sprint was to construct the tower and provide police communications equipment on the tower, with ownership retained by the Municipality. Further, construction was to commence within thirty days of the receipt of the appropriate approvals with construction to be completed sixty days thereafter. Sprint was also to provide an equipment shelter for use by the Township for its police communications equipment.
Sprint moved forward in connection with Township officials for the construction of the tower, including the forwarding of construction plans to the Municipality. On July 26, 2005, a zoning permit was issued by the Township for the above captioned site. Also, at the request of the Municipality, the carriers agreed to lower the Tower's height to 140 feet, with each carrier moving down 10 feet resulting in Omnipoint antennas at 140 feet and Sprint's antennas at 130 feet.
During this same time frame, plaintiff Association had been actively involved in the process and appeared at Township Council meetings to express its concern that the construction of the tower will substantially impact members of the Association, most of which live in close proximity to the Police Station property. For these neighboring members, their objections were that the Tower would be unsightly and negatively impact their property values and the character of the neighborhood. Specifically, the Association argued that the Tower as proposed was not in conformity with the Township's Telecommunications Ordinance, Sections 430-304 et seq. Contrary to the Ordinance, the Tower was to be constructed less than the required 300 feet from a *1172 nearby residence and also less than 300 feet from a zone boundary. In addition, the Tower's height was to be 140 feet which exceeded the 125 foot maximum height limitation and was to be a lattice work design rather than a monopole as provided in the Ordinance.
The Association asserts that at a minimum Sprint and Omnipoint were required to apply for zoning or planning board variance approvals and, as private companies, they are not exempt from the municipal telecommunications ordinance although co-locating on a municipal communications tower on property leased from the Township. The fact that no application for such approvals were filed by Omnipoint or Sprint, the Association argues, bars the construction of the Tower and as private companies, they do not share in any exemption from zoning approvals which the municipality may enjoy.
In response, Parsippany asserts that the tower is necessary for reliable and vital police, fire, emergency and municipal services and communications, particularly given the topographical variations in the Township. The prior police communications tower, and a temporary 100 foot tower the Township is currently utilizing while awaiting construction of the replacement, have been inadequate according to Parsippany. It complains that vital communications are being dropped and lost and there is great concern over reliability. The Township further alleges that due to reliability, safety and security considerations, the proposed location is the only suitable location for a much-needed replacement tower. The Township points to the following facts. First, the Tower has been the subject of public proceedings, with input and comment from the plaintiff Association, its constituents, and its consultants. Second, the proposed Tower was the subject of a publicly noticed "courtesy review" by the Township Planning Board and there were also meetings between the plaintiff's representatives and the Township. Third, alternatives were explored and considered by the Township. Parsippany concludes that the plaintiffs' position fails, because the municipal communications tower, as well as the private telecommunications carriers as co-locators, are exempt from the zoning ordinances under the circumstances presented. These circumstances are grounded in arguments that the Township and its lessees, Sprint and Omnipoint, need not obtain zoning approvals because of the specified public purposes served.

I
In Thornton v. Village of Ridgewood, 17 N.J. 499, 111 A.2d 899 (1955), our Supreme Court determined the related question of whether a municipality is exempt from zoning regulation in acquiring property within a one-family residential district for an administration building and assembly hall. The Court found that the local zoning ordinance could not prevent the municipality from its power to determine the location of municipal facilities. It reasoned:
There is authority to the effect that municipal officials usually comply with, and should be the first to obey, the requirements of the municipal zoning ordinance. Bassett, Zoning (1940), pp. 31, 212. However, it is said, "The need of a public building in a certain location ought to be determined by the federal, state, or municipal authority, and its determination on the question of necessary or desirable location cannot be interfered with by a local zoning ordinance . . . "
[Thornton, supra, at 513, 111 A.2d 899]
The question also followed in Thornton as to whether the local ordinance itself provided any restrictions. There the ordinance read "governmental owned or operated" *1173 structures were permitted in a residential zone district. Here, Section 430-9(B) of the Parsippany-Troy Hills Ordinance reads:
Application to Township. Regardless of whether the township or any duly constituted Township board, agency or department is acting in or pursuant to the performance of a governmental or proprietary function, any municipally owned, operated or controlled building, structure, facility or use, either existing or proposed, shall be permitted in any class of zone as set forth in this chapter, it being the intention of this subsection that whatever the Township may authorize to do shall constitute a functional government and that whenever the Township shall act, pursuant to granting authority, it acts as government and not as a private entrepreneur.
This provision exempts from zone regulation "any municipally owned, operated or controlled building, structure, facility or use, either existing or proposed." Its language is broad and does not purport to limit Township activities. The validity of this Ordinance provision is not at issue herein. Yet, in the context of considering zoning exemptions for a municipality, despite such broad language, the same must be viewed and limited by activities that are couched in a public purpose and not in the nature of "a private entrepreneur". See Washington Twp. v. Ridgewood Village, 26 N.J. 578, 584, 141 A.2d 308 (1958), wherein the Supreme Court stated that ". . . whatever local government is authorized to do constitutes a function of government and when a municipality acts pursuant to a granted authority its acts as government and not as a private entrepreneur". Our present Municipal Land Use Law, N.J.S.A. 40-55D-1-163 does not alter this concept and accordingly does not restrain the power of a municipality to determine where to locate municipal facilities within its borders. Cox, New Jersey Zoning and Land Use Administration, § 21-5 at p. 506 (Gann 2005 edition).
Clearly these principles as articulated in Thornton and Washington Twp., coupled with Parsippany's own ordinance, encompass a communication tower owned by the Municipality for its police use. The Municipality is not restrained from determining its location within its borders. However, the exercise of such authority is not without limitation. In Aviation Services, Inc. v. Board of Adjustment of Hanover Twp., 20 N.J. 275, 285, 119 A.2d 761 (1956), the Supreme Court held that a municipality's power to establish and maintain an airport was not subject to the zoning restrictions of another municipality where the airport was located. However, the Court noted that such power must be "reasonably exercised in response to the public need."
Considerations to be weighed include the overall zone plan as well as the impact on surrounding properties and evaluation of alternate sites, Washington Twp., supra, 26 N.J. at 584-585, 141 A.2d 308. In the context of alternate sites, the extent of deviation from the zone plan is relevant. Compare in this regard, Scotch Plains Twp. v. Westfield, 83 N.J.Super. 323, 199 A.2d 673 (Law Div.1964), wherein the Court found the test of reasonableness is not focused on the impact on adjacent landowners which would limit the municipality's ability to provide a vital public service. Rather, it is to be determined by whether a "reasonable alternative" has been rejected by the municipality which would be more in conformity with the general zone plan. Id. at 341, 199 A.2d 673. While more narrow in scope, the reasonableness test in Scotch Plains Twp. is based on efforts by the municipality to comply with its zone plan.
A broader view, in consideration of multiple factors, has support in those analogous *1174 cases considering whether States, Counties and their governmental agencies are immune from municipal zoning regulations. Immunity from local zoning regulation is afforded to a governmental authority superior to a municipality, such as the County or State or its agencies, in the absence of statutory language to the contrary. Rutgers v. Piluso, 60 N.J. 142, 286 A.2d 697 (1972). However, the immunity is not absolute and determined by legislative intent. The Supreme Court has found that such legislative intent is rarely expressed and must be determined by many factors. In Rutgers, supra, 60 N.J. at 152, 286 A.2d 697, the Court stated:
The rationale which runs through our cases and which we are convinced should furnish the true test of immunity in the first instance, albeit a somewhat nebulous one, is the legislative intent in this regard with respect to the particular agency or function involved. That intent, rarely specifically expressed, is to be divined from a consideration of many factors, with a value judgment reached on an overall evaluation. All possible factors cannot be abstractly catalogued. The most obvious and common ones include the nature and scope of the instrumentality seeking immunity, the kind of function or land use involved, the extent of the public interest to be served thereby, the effect local land use regulation would have upon the enterprise concerned and the impact upon legitimate local interests . . . In some instances one factor will be more influential than another or may be so significant as to completely overshadow all others. No one, such as the granting or withholding of the power of eminent domain, is to be thought of as ritualistically required or controlling. And there will undoubtedly be cases, as there have been in the past, where the broader public interest is so important that immunity must be granted even though the local interests may be great. The point is that there is no precise formula or set of criteria which will determine every case mechanically and automatically.
Applying those factors, our Appellate Court in Mayor & Council of Town of Kearny v. Clark, 213 N.J.Super. 152, 155, 516 A.2d 1126 (App.Div.1986) found that Hudson County was not subject to Kearny's municipal zoning requirements with respect to the construction of a jail facility. In their analysis, the Court also considered the "local consultation requirement" articulated in Rutgers v. Piluso, supra, 60 N.J. at 154, 286 A.2d 697, as follows:
And, at the very least, even if the proposed action of the immune governmental instrumentality does not reach the unreasonable stage for any sufficient reason, the instrumentality ought to consult with the local authorities, and sympathetically listen and give every consideration to local objections, problems and suggestions in order to minimize the conflict as much as possible.
Mayor & Council of Town of Kearny, supra, 213 N.J.Super. at 159, 516 A.2d 1126.
The Court however, reasoned that such a requirement does not imply that the County must meet the strict positive and negative criteria test applicable to a use variance. That would render immunity meaningless and is not the intent of the "local consultation requirement." Rather, the Court considered that it could in the facts presented therein evaluate the reasonableness of the county's determination on the broader view of the effect the jail would have on the surrounding area. Mayor & Council of Town of Kearny, supra, 213 N.J.Super. at 160-61, 516 A.2d 1126. See also, Berger v. State, 71 N.J. 206, 219-220, 364 A.2d 993 (1976), to the same effect. These principles which are applicable to the immunity afforded to a *1175 governmental authority superior to a municipality are, a fortiori, equally applicable to a municipality's immunity and consideration of its citizens' concerns.
Applying such reasoning to the facts herein, Parsippany may construct the communications tower at its police headquarters without obtaining zoning approvals, but its construction plan is subject to review to determine whether the Township acted reasonably in the exercise of its authority. That review is not in the nature of satisfying the positive and negative criteria for a use variance, rendering exemption from zoning regulation meaningless. Instead, our developed case law, as stated, requires a municipality to act reasonably in this regard by focusing on such factors as the kind of function or land use involved, the extent of the public interest to be served, the deviation from a municipality's zone plan and the impact on surrounding properties. In this context, the consideration of alternative sites is necessary as it minimizes the deviation from the zone plan and impact upon surrounding properties. Further, that analysis is not complete unless the municipality has afforded the public a meaningful opportunity to be heard on these factors in keeping with a "local consultation requirement." The municipality may set forth a procedure for public input on the issue but, if the result is form over substance, the meaningful opportunity to be heard may lost.

II
In consideration of those public concerns, Parsippany points to a "courtesy review" by the planning board and the fact that the location, configuration and height of the communication tower was discussed and commented on by the plaintiff Association specifically in some 15 public hearings between January 4, 2005 and May 10, 2005. Further, that two informal independent meetings were held on February 23 and March 24, 2005 where plaintiff and its expert were given the opportunity to present their alternatives.
Plaintiff, however, asserts that this procedure did not allow for substantive debate. A courtesy review by the planning board was first considered on March 17, 2003 wherein the plan did not show a communication tower at 150 feet in height (later altered to 140 feet). Thereafter, the second courtesy review occurred on June 14, 2004 where the plan and height of the tower substantially changed with bid awards to Omnipoint on June 22, 2004 in this regard and a lease on July 14, 2004, with the lead position transferred to Sprint on November 10, 2004. The plaintiff Association, although actively involved, did not receive notice of the June 14, 2004 courtesy review by the planning board. However, public notice was given in the local newspaper as required.
Plaintiff asserts that by the time it learned of the changes, the bid had been awarded and leases completed for construction of the communication tower. In addition, the discussions at public meetings from January to May 2005 confined the plaintiff to a three minute time limit per speaker at each meeting with its expert unable to make a presentation. Further, the two independent meetings where Parsippany's experts and plaintiff's expert were heard were informal and not subject to a thorough public hearing process or direct and cross examination.
In this regard, without a record of the two informal independent meetings, the Court is unable to review whether the municipality exercised its power reasonably in response to the public interest. While Parsippany has employed acceptable procedures by courtesy planning board reviews and public meetings on the issue, the substance of that procedure on alternate sites with expert analysis was discussed at *1176 informal meetings and is unavailable to the Court to determine whether there was a meaningful consideration of plaintiff's concerns. The Court is left with only factual contradictions as to whether alternative sites were realistic as discussed in the informal meetings. This is especially troublesome where the municipality's response to the plaintiff's concerns was after the fact of contracts with Omnipoint and Sprint.
In addition, Parsippany's Wireless Communication Ordinance placed restrictions on the erection and positioning of wireless transmission equipment which includes stealth technology to minimize impact, monopole design and a visual impact study. The need for deviation from these requirements was not discussed by the municipality in an open forum. Studies on the height for appropriate services and expense proposals on moving the tower to another location were apparently not done. See for example, Scotch Plains Twp., supra, 83 N.J.Super. at 341-42, 199 A.2d 673, which framed the test of reasonableness on whether there were alternate sites available more in conformity with the zone plan and the municipal planning board first did a study on alternate sites. Also, Mayor & Council of Town of Kearny, supra, 213 N.J.Super. at 160-61, 516 A.2d 1126, where the County Executive consulted with local officials prior to bidding on the property.
The Court is cognizant that the bid process and planning board reviews were publicly noticed and that Parsippany asserts that plaintiff is now, in effect, objecting after the fact. However, the procedural history of this case warranted that the plaintiff Association should have the opportunity to be heard even after the bid process and planning board review concluded. The evidence shows that the Municipality agreed and in good faith attempted to address plaintiff's concerns as stated at meetings from January to May 2005. However, public forum discussions were abbreviated, and informal meetings where experts were heard have no public record for review, preventing the Court from determining whether the Municipality met the test of reasonableness.
Accordingly, on this issue, the matter is remanded to the Municipality to conduct public hearings where the plaintiff association will have the meaningful opportunity to be heard at a public forum on such considerations as (1) alternative sites, (2) the costs involved, including the costs already expended on the preparation work completed at the existing planned tower location, and (3) whether another design and location may be more in conformity with its telecommunications ordinance. Parsippany may then set forth reasons for their decision involving but not limited to alternate sites, costs to its citizens and conformity to its zone plan whereby the Court may judge the municipality's reasonable exercise of authority.

III.
The plaintiff Association has also raised the corollary issue that Sprint and Omnipoint, as private companies, do not share in the exemption from zoning approvals available to the municipality. The Association argues that as private telecommunication providers, the companies are subject to Parsippany's telecommunications ordinance although co-locating on a municipal communications tower, on property owned by and leased from the Township. Their conclusion is based on the contention that Sprint and Omnipoint are advancing their own private financial interests rather than public purposes.
Consideration of this question is one of first impression in New Jersey. However, our Courts and statutes provide guidance in first viewing zoning regulation *1177 in terms of the use of land rather than the legal form that ownership or other possessory interests may take. Our Municipal Land Use Law allows for municipal regulation of uses of land only. William M. Cox, N.J. Zoning and Land Use Administration, Section 1.1 at p. 2 (Gann 2005 Edition). In this regard, if the use is by the municipality engaged in government business for public purposes, and it's a reasonable exercise of its authority, its exemption from zoning regulation may extend to those who join in advancing that public purpose. Status as a private enterprise alone should not control even though the private enterprise receives financial or other private benefits.
In Crown Commun. NY Inc. v. DOT, 4 N.Y.3d 159, 791 N.Y.S.2d 494, 824 N.E.2d 934 (2005), the New York Court of Appeals determined whether the installation of private antennae on two state owned telecommunications towers was exempt from local zoning regulation. In that case, a private telecommunications company entered into an agreement with the New York State Police on behalf of itself and state agencies, including the Department of Transportation, "to construct and operate telecommunication towers on state owned lands and rights of way. The agreement was subsequently assigned to the plaintiff, Crown Communications. Crown was allowed to license tower space to private commercial wireless providers" and the State retained the right to co-locate its own communications equipment on the towers. The first proposed tower was a 120 foot monopole to replace a 110 foot lattice tower located on a DOT right of way. The other tower was lattice type to be erected at a DOT maintenance yard. Initially Crown informed the City of New Rochelle, within which the towers would be located, of its plan and the City did not object. Crown proceeded with construction and contracted with wireless providers. The City thereafter issued a stop work order after the maintenance yard tower was complete and while the replacement tower was being constructed. New Rochelle argued that the private communications providers were subject to local zoning regulations.
Similar to the within matter, the City recognized that the towers themselves, as State owned, were exempt from regulations but argued that such immunity does not extend to commercial equipment on the tower. It asserted the right to evaluate the private antennae installation in terms of coverage gaps, alternate locations and aesthetics. Crown and the State responded that the State's plan envisioned a public private partnership and that the joint use of the towers advances the State's public purpose goals, including safety.
The Court found:
That the installation of licensed commercial antennae on the towers should also be accorded immunity because co-location serves a number of significant public interests that are advanced by the State's overall telecommunications plan. At this time, there are apparently more private than public antennae on the towers, but the presence of commercial equipment does not exclusively serve private interests. The private antennae will improve the availability of 911 emergency cellular calls made by the public, thereby promoting the public safety interest central to construction of the State's towers . . . Significantly, the co-location of public and private equipment also eliminates the need for the proliferation of telecommunications towers, an important environmental and aesthetic public concern. Furthermore, profits derived from licensing space to wireless providers will ultimately aid in financing the construction of the Stat telecommunications infrastructure plan.

*1178 The fact that the wireless providers will also realize profit from their services does not undermine the public interest served by co-location.

Crown Commun. NY Inc., supra, 4 N.Y. 3rd at 167, 824 N.E.2d 934.
The facts in Crown are distinguishable from the within matter due to superior State interests and reliance factors in that the towers were constructed in large measure prior to objection. Further, the Court applied a balancing of public interests test between the State and municipal interests. However, the principles grounded in an overriding public purpose analysis apply herein. See also, in a similar fact pattern, GTE Wireless v. Anderson Twp., 134 Ohio App.3d 352, 731 N.E.2d 201 (1999) (private status of companies not relevant but rather the public nature of the activity sought to be regulated).
The public purpose analysis requires a consideration of (1) the reasons why the municipality entered into a partnership with a private enterprise, (2) the type of public interest to be served thereby at the particular location, (3) the nature of the private enterprise, and (4) weighing the same against the private benefits obtained, to conclude whether a private enterprise is exempt from zoning regulation on a municipal project from local zoning regulation. Where, on such analysis, the public interest outweighs, the private companies may share in the municipality's zoning exemption. Municipalities will always have the power to contract with private enterprises on municipal land projects and as long as those agreements are for an overriding public purpose, zoning exemptions exercised reasonably should apply to the private companies.
Here, Parsippany was replacing its police headquarters and its communication tower for police, fire and other emergency services, a significant public purpose to be located on a major highway, Route 46. It sought to enter into an agreement with Sprint and Omnipoint to construct the tower at no cost to the municipality and to obtain rent for the private antennae to be co-located on the tower. Further, the nature of the private enterprise itself is to enhance wireless telecommunications which enhances the general welfare under The Telecommunications Act of 1996, 47 U.S.C. 332. While preserving local zoning authority, the Act provides that local regulations may not prohibit or have the effect of prohibiting the provisions of personal wireless services. Further, in providing guidance for cases involving the location of cell tower facilities, although not deemed inherently beneficial uses, our Supreme Court has stated that ". . . generally, the issuance of an FCC license should suffice for a carrier to establish that the use serves the general welfare . . ." Smart SMR v. Borough Fair Lawn Bd. of Adj., 152 N.J. 309, 336, 704 A.2d 1271 (1998).
Under these circumstances the private telecommunication providers herein may share in the exemption from zoning regulations enjoyed by Parsippany upon a reasonable exercise of its authority. The fact that the companies will receive a private benefit is secondary and outweighed here by the public interests served  a police headquarters and communications tower for emergency services.

IV
For the reasons stated, in this matter Parsippany is exempt from its zoning regulations in locating the communications tower within its borders and Omnipoint and Sprint share in that exemption as co-locators in the public purposes served. Parsippany, however is bound to the reasonable exercise of such authority. Here, their substantive determinations in exercising *1179 such authority is without an adequate foundation requiring a remand for further public hearings to allow the plaintiff Association a meaningful opportunity to be heard. Orders are entered accordingly.[1]
NOTES
[1] The Court entered its Remand Order to Parsippany-Troy Hills Township Council on November 30, 2005, to consider the location of the communications tower, including considering viable alternative locations and the impact on the surrounding neighborhood and the zone plan. Thereafter, hearings were held on remand by the municipality which determined to continue the construction of the communication tower at its police headquarters location. Upon further review of the municipality's decision, the Court entered an Order for judgment on August 4, 2006, which affirmed the municipal action, dismissed plaintiff's complaint with prejudice and granted judgment in favor of the defendants, Township of Parsippany-Troy Hills, Omnipoint Communications, Inc. and Sprint Spectrum, L.P., based upon the standards set forth herein.