■ In the Matter of CROWN COMMUNICATION NEW YORK, INC., Appellant, v DEPARTMENT OF TRANSPORTATION OF THE

STATE OF NEW YORK, Appellant, and CITY OF NEW ROCHELLE et al., Respondents. JAMES CAVANAUGH, Intervenor-Respondent. (Matter No. 1.) In the Matter of CROWN COMMUNICATION NEW YORK, INC., Appellant, v DEPARTMENT OF TRANSPORTATION OF THE STATE OF NEW YORK, Appellant, and CITY OF NEW ROCHELLE et al., Respondents. (Matter No. 2.) [765 NYS2d 898] —In related hybrid proceedings pursuant to CPLR article 78, inter alia, in the nature of prohibition to prohibit the City of New Rochelle, J. Robert Dolan, as Commissioner of the Department of Public Works of the City of New Rochelle, and the Commissioner and/or Deputy Commissioner of the Department of Development from enforcing the City of New Rochelle's zoning regulations against the construction of two telecommunications towers, and actions, inter alia, for a judgment, declaring that the two towers are exempt from local zoning regulations, the petitioner-plaintiff appeals, and the respondent-defendant Department of Transportation of the State of New York separately appeals, from an order of the Supreme Court, Westchester County (Colabella, J.), entered July 2, 2002, which, upon reargument, modified a prior order and judgment (one paper) of the same court entered November 13, 2001, finding that the commercial telecommunications providers licensed to install their equipment on the towers are subject to local zoning regulations.

Ordered that the order is modified, on the law, by deleting the provision thereof which, upon reargument, found that the commercial telecommunications providers licensed to install their equipment on the towers are subject to local zoning regulations, and substituting therefor a provision, upon reargument, modifying the order and judgment by declaring that the commercial telecommunications providers licensed to install their equipment on the towers are not subject to local zoning regulations; as so modified, the order is affirmed, with one bill of costs to the appellants.

In August 1997 the New York State Police (hereinafter the State Police), on behalf of itself and participating State agencies including the Department of Transportation (hereinafter the DOT), entered into an agreement with Castle Tower Holding Corporation (hereinafter Castle), pursuant to which Castle was granted an exclusive license to construct and operate telecommunications towers on certain State-owned lands and rights-of-way. In March 1998 Castle assigned the agreement to Crown Communication New York, Inc. (hereinafter Crown). Under the terms of the agreement, Crown was permitted to license space on these towers to, among others, commercial

wireless telecommunications providers, and the State retained the right to co-locate its own communications equipment on the towers. The towers, nevertheless, remain the property of the State.

In June 2000 Crown, the State Police, and the DOT informed officials of the City of New Rochelle (hereinafter the City) of their plans to construct a tower at a DOT maintenance yard and to replace an existing tower on a DOT right-of-way. Both sites are located within the City along the Hutchinson River Parkway. Thereafter, Crown proceeded with the plans to construct the towers and entered into license agreements with four commercial wireless telecommunications providers (AT&T Wireless Services, Sprint Spectrum, L.P., Omnipoint Communications, Inc., and Nextel of New York, Inc.) (hereinafter the Wireless Telephone Providers) to share space on the towers. No zoning approval was sought from the City. When the towers were under construction, the City withdrew its sidewalk permit with respect to one tower and issued a notice of violation and stop-work order with respect to the other tower, contending that the towers were subject to the City's zoning regulation requiring application for a special permit from the Planning Board of the City of New Rochelle for the construction of a wireless telecommunications facility (see New Rochelle Code, article IXA, § 331-64.4 [A]).

Crown then commenced these hybrid proceedings and actions seeking, inter alia, to prohibit the City from enforcing its zoning regulations against the towers and for a judgment declaring that the towers are exempt from local zoning regulations. By order and judgment entered November 13, 2001, the Supreme Court applied the "balancing of public interests" test adopted by the Court of Appeals in *Matter of County of Monroe* (72 NY2d 338, 341 [1988]) and, inter alia, found that the two towers were exempt from local zoning regulations and enjoined the City from interfering with the construction and operation of the towers. By order entered July 2, 2002, the Supreme Court granted the City's motion for leave to reargue and, upon reargument, modified the prior order and judgment to the extent that it found that the Wireless Telephone Providers licensed to install their equipment on the towers were subject to the City's zoning regulations, and otherwise adhered to its original determination.

Contrary to Crown's contention, the Supreme Court providently exercised its discretion in granting leave to reargue (see CPLR 2221 [d] [2]; *Matter of Eveready Ins. Co. v Farrell,* 304 AD2d 830 [2003]; *Rodney v New York Pyrotechnic Prods. Co.,* 112 AD2d 410 [1985]).

However, we agree with the appellants that the Wireless Telephone Providers who have licensed space on the subject towers are not subject to the City's zoning regulations (*see Matter of County of Monroe, supra*). The Wireless Telephone Providers are not precluded from enjoying the State's immunity simply because they are private entities or because colocating on the DOT's towers will advance their financial interests (*see Matter of County of Monroe, supra; Murphy v Erie County*, 28 NY2d 80 [1971]). Thus, it is not the private status of the Wireless Telephone Providers but, rather, the public nature of the activity sought to be regulated by the local zoning authority that is determinative in this case.

Moreover, the fact that colocation on the DOT's towers will further the private interests of the Wireless Telephone Providers does not undermine the public purposes underlying the licenses granted by the State. The DOT has expressed its intention to locate its new transit communications system and Intelligent Traffic System on the towers, the State Police will have the opportunity to colocate its new communications equipment on the towers, the towers have the potential to become part of a statewide wireless network, and space on the towers has been offered to local public safety agencies. The goals of the DOT and the State Police to improve traffic flow, motorist safety, and emergency response along the Hutchinson River Parkway would be facilitated by, and partially financed by, the shared use of the towers.

Furthermore, the present case concerns more than just a municipality leasing space to a private entity (*cf. Matter of Foster v Saylor*, 85 AD2d 876 [1981]). The shared use of the towers is integral to the State plan of improving its own telecommunications infrastructure and furthers the State's goal of reducing the proliferation of towers. As in *Matter of County of Monroe* (*supra* at 344), allowing the City to enforce its zoning laws against the Wireless Telephone Providers under these circumstances would "foil the fulfillment of the greater public purpose" in constructing these facilities.

Finally, neither the Telecommunications Act of 1996 nor the license agreements mandate compliance with local zoning regulations under the circumstances herein. Altman, J.P., Krausman, Goldstein and Luciano, JJ., concur.