[824 NE2d 934, 791 NYS2d 494]

In the Matter of CROWN COMMUNICATION NEW YORK, INC., Respondent, v DEPARTMENT OF TRANSPORTATION OF THE STATE OF NEW YORK, Respondent, CITY OF NEW ROCHELLE et al., Appellants, and JAMES CAVANAUGH, Individually and as Town Supervisor of the Town of Eastchester, Intervenor-Respondent. (Matter No. 1.)

In the Matter of CROWN COMMUNICATION NEW YORK, INC., Respondent, v DEPARTMENT OF TRANSPORTATION OF THE STATE OF NEW YORK, Respondent, and CITY OF NEW ROCHELLE et al., Appellants. (Matter No. 2.)

Argued January 5, 2005; decided February 10, 2005

**POINTS OF COUNSEL**

*Bernis E. Shapiro, Corporation Counsel,* New Rochelle (*Kathleen E. Gill* of counsel), for appellants. I. *Matter of County of Monroe* (72 NY2d 338 [1988]) does not apply to this matter. (*Nehrbas v Incorporated Vil. of Lloyd Harbor,* 2 NY2d 190; *County of Westchester v Village of Mamaroneck,* 22 AD2d 143, 16 NY2d 940; *Village of Larchmont v Town of Mamaroneck,* 239

NY 551; *Schrempf v State of New York,* 66 NY2d 289; *Denihan Enters. v O'Dwyer,* 302 NY 451; *Murphy v Erie County,* 28 NY2d 80; *Little Joseph Realty v Town of Babylon,* 51 AD2d 158, 41 NY2d 738; *Queens County Bus. Alliance v New York State Racing Assn.,* 89 AD2d 46; *Matter of Foster v Saylor,* 85 AD2d 876; *Gannett Satellite Info. Network, Inc. v Metropolitan Transp. Auth.,* 745 F2d 767.) II. Even if applicable, *Matter of County of Monroe* (72 NY2d 338 [1988]) requires compliance with local regulations. (*Sprint Spectrum L.P. v Willoth,* 176 F3d 630; *Omnipoint Communications Enters., L.P. v Newtown Twp.,* 219 F3d 240, 531 US 985; *AT & T Wireless PCS, Inc. v City Council of City of Virginia Beach,* 155 F3d 423; *Omnipoint Communications, Inc. v Common Council of City of Peekskill,* 202 F Supp 2d 210; *Matter of Foster v Saylor,* 85 AD2d 876.)

*Wilson, Elser, Moskowitz, Edelman & Dicker LLP,* White Plains (*Katherine H. Zalantis* of counsel), and *John A. Sarcone III, Town Attorney,* Eastchester, for intervenor-respondent. I. The commercial carriers are subject to the City of New Rochelle's local law. (*Incorporated Vil. of Nyack v Daytop Vil.,* 173 AD2d 778, 78 NY2d 500; *Matter of County of Monroe,* 72 NY2d 338; *DJL Rest. Corp. v City of New York,* 96 NY2d 91; *Chambers v Old Stone Hill Rd. Assoc.,* 1 NY3d 424; *Gache v Town of Harrison, N.Y.,* 813 F Supp 1037; *Sprint Spectrum L.P. v Willoth,* 176 F3d 630.) II. The Supreme Court's order merely enforced the terms of the subsequent license agreements. (*Chambers v Old Stone Hill Rd. Assoc.,* 1 NY3d 424; *Nancy Neale Enters. v Eventful Enters.,* 260 AD2d 453.) III. Even under the *Matter of County Monroe* (72 NY2d 338 [1988]) balancing test, the commercial carriers are not immune from the local law. (*Matter of King v County of Saratoga Indus. Dev. Agency,* 208 AD2d 194, 85 NY2d 809; *Chambers v Old Stone Hill Rd. Assoc.,* 1 NY3d 424; *New York SMSA Ltd. Partnership v Town of Riverhead Town Bd.,* 118 F Supp 2d 333; *Sprint Spectrum L.P. v Willoth,* 176 F3d 630; *Matter of Bell Atl. NYNEX Mobile v Lonergan,* 251 AD2d 660; *APT Pittsburgh Ltd. Partnership v Penn Twp. Butler County of Pa.,* 196 F3d 469; *SiteTech Group Ltd. v Board of Zoning Appeals of Town of Brookhaven,* 140 F Supp 2d 255; *Airtouch Cellular v City of El Cajon,* 83 F Supp 2d 1158; *Omnipoint Communications, Inc. v Common Council of City of Peekskill,* 202 F Supp 2d 210; *Little Joseph Realty v Town of Babylon,* 51 AD2d 158, 41 NY2d 738.)

*Eliot Spitzer, Attorney General,* New York City (*David Axinn, Caitlin J. Halligan, Michael S. Belohlavek* and *Richard Lom-*

*bardo* of counsel), for New York State Department of Transportation, respondent. I. The City of New Rochelle's zoning laws do not apply to placement of commercial users' equipment on the State of New York's telecommunications infrastructure. (*City of Rye v Public Serv. Mut. Ins. Co.*, 34 NY2d 470; *Matter of Hongisto v Mercure*, 72 AD2d 850; *Nanuet Fire Engine Co. No. 1 v Amster*, 177 Misc 2d 296; *Nowak v Department of Audit & Control of State of N.Y.*, 72 Misc 2d 518; *Matter of Unitarian Universalist Church of Cent. Nassau v Shorten*, 63 Misc 2d 978; *White v Westage Dev. Group*, 191 AD2d 687, 82 NY2d 706; *Anderson v Taconic State Park Commn.*, 262 App Div 892, 287 NY 668; *Matter of Cellular Tel. Co. v Rosenberg*, 82 NY2d 364; *Reno v American Civ. Liberties Union*, 521 US 844; *Sprint Spectrum L.P. v Willoth*, 176 F3d 630.) II. The Telecommunications Act of 1996 does not subject the commercial users to local zoning or invalidate the State of New York's licensing agreements. (*Sprint Spectrum L.P. v Willoth*, 176 F3d 630; *Omnipoint Communications Enters., L.P. v Newtown Twp.*, 219 F3d 240.) III. The Telecommunications Site Manager Agreement and form licensing agreements do not require the application of local zoning laws to the commercial users. (*Ruttenberg v Davidge Data Sys. Corp.*, 215 AD2d 191; *Laba v Carey*, 29 NY2d 302; *Uribe v Merchants Bank of N.Y.*, 91 NY2d 336; *Loblaw, Inc. v Employers' Liab. Assur. Corp.*, 57 NY2d 872; *Brooke Group v JCH Syndicate 488*, 87 NY2d 530.)

*Crane, Greene & Parente*, Albany (*Jacqueline Phillips Murray* and *John P. Stockli, Jr.*, of counsel), for Crown Communication New York, Inc., respondent. I. The wireless telecommunications antennas that are attached to the State of New York's towers are embraced by the immunity afforded the State's towers. (*Matter of Cellular Tel. Co. v Rosenberg*, 82 NY2d 364; *Matter of County of Monroe*, 72 NY2d 338; *Matter of New York Botanical Garden v Board of Stds. & Appeals*, 91 NY2d 413; *Matter of Karedes v Colella*, 100 NY2d 45; *Matter of St. Onge v Donovan*, 71 NY2d 507; *Matter of Sanzoverino v Bruscella*, 291 AD2d 502; *Town of Oyster Bay v Syosset's Concern About Its Neighborhood*, 173 AD2d 813, 79 NY2d 916; *Huerta v New York City Tr. Auth.*, 290 AD2d 33.) II. Neither federal law nor the State of New York's Telecommunications Site Manager Agreement require the antennas attached to the State's towers to be subject to local zoning laws. (*Matter of County of Monroe*, 72 NY2d 338; *Sprint Spectrum L.P. v Willoth*, 176 F3d 630; *Omnipoint Communications Enters., L.P. v Newtown Twp.*, 219 F3d 240; *AT & T Wireless PCS, Inc. v City Council of City of Va. Beach*, 155

F3d 423; *Omnipoint Communications, Inc. v Common Council of City of Peekskill,* 202 F Supp 2d 210; *Matter of Foster v Saylor,* 85 AD2d 876; *Little Joseph Realty v Town of Babylon,* 51 AD2d 158, 39 NY2d 827; *Matter of Newham v Chile Exploration Co.,* 232 NY 37.)

*Riele J. Morgiewicz,* Albany, for New York State Conference of Mayors and Municipal Officials, amicus curiae. It is imperative that municipalities be able to enforce their land use laws against private entities. (*Village of Euclid, Ohio v Ambler Realty Co.,* 272 US 365; *Matter of County of Monroe,* 72 NY2d 338.)

**OPINION OF THE COURT**

GRAFFEO, J.

In this case we are asked whether the installation of private antennae on two state-owned telecommunications towers is exempt from local zoning regulation. Under the particular facts and circumstances of this case, we conclude that the commercial telecommunications providers involved in this state project are not required to make applications for special permits.

In 1997, the New York State Police, on behalf of itself and participating state agencies including the Department of Transportation (DOT or collectively the State), entered into a Telecommunications Site Manager Service Agreement with Castle Tower Holding Corporation to provide Castle with an exclusive license to construct and operate telecommunications towers on state-owned lands and rights-of-way. Castle subsequently assigned the agreement to Crown Communication New York, Inc. Under the terms of the state contract, Crown was permitted to license space on the towers to localities and commercial wireless providers, and the State retained the right to co-locate its own communications equipment on the towers.

After Crown identified two potential locations for towers on state-owned property within the City of New Rochelle (the City), the State granted Crown conceptual approval to commence a preliminary site evaluation for the construction of both towers. One proposed tower, consisting of a 120-foot monopole, would replace an existing 110-foot lattice communications tower located on a DOT right-of-way. The other planned tower—a lattice-type structure—would be erected at a DOT maintenance yard. Both sites are situated along the Hutchinson River Parkway.

In May 2000, the State informed the City of Crown's telecommunications plans. The following month, Crown and the State

gave a public presentation to the Mayor and City Council regarding the purpose and intended use of the two proposed towers. At this meeting, the City voiced no objection to the siting or construction of the towers and Crown offered space on the facilities to the municipality for use by its public safety agencies. This invitation was reiterated in correspondence sent to the City. Thereafter, DOT, as lead agency, performed an environmental review of both sites pursuant to the State Environmental Quality Review Act (SEQRA). DOT issued a negative declaration for each location, finding that neither the replacement tower nor the maintenance yard tower would result in any significant adverse environmental or aesthetic impact based on the nature and location of the sites.

Crown proceeded with the construction of the towers and entered into license agreements with a number of commercial wireless telecommunications providers to lease space on the towers for their equipment.[1] After the maintenance yard tower was completed, and during construction of the replacement tower, the City issued a stop work order, contending that the towers were subject to the City's zoning laws and that Crown must therefore apply for a special permit from the City's Planning Board.

In 2001, Crown commenced separate hybrid declaratory judgment and CPLR article 78 proceedings seeking a judgment prohibiting the City from enforcing its zoning regulations to halt construction of the towers and a declaration that the towers were exempt from the local zoning regulations. The two proceedings were later consolidated. Although DOT was a named defendant, it joined in the relief sought by Crown. The Supervisor of the Town of Eastchester later intervened as an additional defendant.

Supreme Court initially declared the towers immune from local zoning regulations and enjoined the City from interfering with their construction and operation. The court applied the "balancing of public interests" test adopted by this Court in *Matter of County of Monroe* (72 NY2d 338 [1988]) and determined that the State's interests outweighed the City's interests. After reargument, Supreme Court modified its prior order to the extent that it found that the private telecommunications

---

1. Both towers have been fully operational since March 2002. At oral argument, the State indicated that five commercial wireless telecommunications companies have installed equipment at the replacement tower site and four companies have placed antennae on the maintenance yard tower.

providers licensed to install their equipment on the towers were subject to local zoning regulation, concluding that there was no basis to exempt them from such laws. The court, however, adhered to its original determination that Crown need not comply with local zoning requirements regarding the construction of the towers.[2]

The Appellate Division modified by declaring that the wireless telecommunications providers are not subject to local zoning regulation and otherwise affirmed (309 AD2d 863 [2003]). The Court held that the telecommunications companies "are not precluded from enjoying the State's immunity simply because they are private entities or because colocating on the DOT's towers will advance their financial interests" (*id.* at 866, citing *County of Monroe*, 72 NY2d 338 [1988]; *Murphy v Erie County*, 28 NY2d 80 [1971]). Thus, the Court determined, "it is not the private status of the Wireless Telephone Providers but, rather, the public nature of the activity sought to be regulated by the local zoning authority that is determinative in this case" (*id.*). We granted the City leave to appeal and now affirm.

The City argues that, although the towers themselves are exempt from regulation, no justification exists to extend such immunity to the installation of commercial equipment on the towers. Specifically, the City asserts that it has the right pursuant to its zoning authority to evaluate whether private antennae are necessary to close cellular telecommunications coverage gaps or should be placed elsewhere, and to require some form of aesthetic camouflaging of equipment. In response, Crown and the State contend that the private carriers are entitled to share in the immunity already enjoyed by the state-owned towers. They claim that the State's plan envisions a public-private partnership and that the joint use of its towers facilitates the State's public safety and environmental goals.

In *County of Monroe*, we addressed the applicability of local zoning laws where a conflict arises between two governmental entities. There, the issue was whether the expansion and accessory uses of a county-owned airport located within the City of Rochester were subject to the City's zoning regulations. Abandoning the traditional governmental-proprietary classification standard used to resolve competing land use claims be-

---

**2.** Because the City failed to challenge the immunity of the towers themselves on appeal, their exemption from local zoning regulation is not at issue in this case.

tween governmental units, we articulated a "balancing of public interests" test (*County of Monroe*, 72 NY2d at 341). Balancing a number of factors, including "the nature and scope of the instrumentality seeking immunity, the kind of function or land use involved, the extent of the public interest to be served thereby, the effect local land use regulation would have upon the enterprise concerned and the impact upon legitimate local interests," we held that they weighed in favor of granting the County immunity for the airport's expansion (*id.* at 343 [internal quotation marks and citation omitted]). We also concluded that such immunity extended to additional structures, including an airport terminal, an air freight facility and parking lots, and that such exemption was appropriate despite the fact that portions of the new structures were to be leased for use by commercial entities (*see id.* at 344-345).

█ In this case, although we are faced not with a dispute between two municipalities but between a state project and a locality, *County of Monroe* informs the result. Here, the State submitted evidence of numerous benefits the government's use of the towers would afford the public, which Supreme Court took into account in finding the towers immune from local regulation under the balancing test. For example, the State is currently in the process of developing its telecommunications infrastructure in anticipation of establishing a Statewide Wireless Network (SWN), which will replace outdated systems with a state-of-the-art digital land mobile radio network designed to permit interagency and intergovernmental communications across the state in emergency situations. According to the affidavit of the State Police's Administrative Officer and Program Manager of the Telecommunications Site Manager Service Agreement, the SWN will operate in the 700-800 megahertz frequency range, while the State Police's current communications system uses a 150 megahertz range. Consultants retained by the State Police have indicated that in order to operate in the higher frequency range, it will be necessary to construct three to four times the approximately 150 existing state-maintained radio sites. The State has therefore reserved space on the replacement and maintenance yard towers for anticipated SWN use when the network becomes operational.

Additionally, DOT has developed an Intelligent Transportation System (ITS), which monitors traffic flow, weather and road conditions. DOT's Director of Traffic Engineering and Safety stated that the collection of such data aids DOT and pub-

lic safety entities in being able to "respond to emergency situations, manage and divert traffic, and provide real-time traffic information to motorists," thereby improving the safety of the traveling public and reducing travel times. DOT explained that the maintenance yard tower utilizes equipment that supports the ITS, and indicated its intention to co-locate additional equipment on the replacement tower. DOT has also placed a radio antenna on the maintenance yard tower to improve the communications range for its maintenance crews and installed video surveillance cameras for improved security at its maintenance yard.

Finally, the State has followed a policy of offering space on its towers to local public safety authorities and offered such space on the two towers to the City in this case. Currently, Westchester County has placed antennae on the replacement tower for use by its Department of Public Safety.

Although Supreme Court determined on reargument that no basis existed to exempt the wireless providers from local zoning regulations, we agree with the Appellate Division that the installation of licensed commercial antennae on the towers should also be accorded immunity because co-location serves a number of significant public interests that are advanced by the State's overall telecommunications plan. At this time, there are apparently more private than public antennae on the towers, but the presence of commercial equipment does not exclusively serve private interests. The private antennae will improve the availability of 911 emergency cellular calls made by the public, thereby promoting the public safety interest central to construction of the State's towers. The Highway Emergency Local Patrol (HELP), consisting of a fleet of trucks which patrol highways— including the Hutchinson River Parkway—relies on wireless services provided by one of the carriers currently co-located on the towers. Numerous state agencies, including the Thruway Authority, Dormitory Authority, Department of Environmental Conservation and Department of Health utilize cellular phone services supported by the carriers in this case. Significantly, the co-location of public and private equipment also eliminates the need for the proliferation of telecommunications towers, an important environmental and aesthetic public concern. Furthermore, profits derived from licensing space to wireless providers will ultimately aid in financing the construction of the State's telecommunications infrastructure plan.

The fact that the wireless providers will also realize profit from their services does not undermine the public interests

served by co-location. Such shared use and benefit is analogous to the airport development project in *County of Monroe*, which likewise served both public and private interests. Subjecting the private carriers to local regulation in this case "could otherwise foil the fulfillment of the greater public purpose of promoting" the State's public safety and environmental goals associated with its telecommunications infrastructure development plan (*County of Monroe*, 72 NY2d at 344). In sum, the public and private uses of the towers are sufficiently intertwined to justify exemption of the wireless providers from local zoning regulations.[3]

*Little Joseph Realty, Inc. v Town of Babylon* (41 NY2d 738 [1977]), relied upon by the City, is distinguishable. In that case, the issue was whether a town's zoning regulations applied to an asphalt plant operated for private profit but located on town-owned land which had been leased to a private entity. Applying the now-abandoned governmental-proprietary function test, we held that the local zoning laws were applicable, reasoning that because the plant "was operated *solely* by and for the commercial benefit of . . . a private entrepreneur," the lease arrangement "could not serve to clothe [the entrepreneur] with immunity from the zoning laws" (*id.* at 742 [emphasis added]). This case, by contrast, does not merely involve the lease of government-owned space to a private firm for the exclusive purpose of making a profit. Rather, the licensing of space to commercial wireless providers is an integral component of the State's plan of promoting public safety and reducing the proliferation of cellular towers, clearly salient public purposes.

■ Nor does the extension of immunity to the private providers in this case conflict with the Telecommunications Act of 1996 (TCA) (47 USC § 151 *et seq.*). Section 332 of the TCA provides that, subject to enumerated exceptions, "nothing in this chapter shall limit or affect the authority of a State or local

---

3. The dissent focuses on whether the State has preempted the telecommunications field with regard to the construction of facilities. It is true that where the State preempts a particular area and indicates an intention to preclude local regulation, any inconsistent local law is rendered inapplicable (*see Incorporated Vil. of Nyack v Daytop Vil., Inc.*, 78 NY2d 500, 505 [1991]). We agree with the dissent that the State has not preempted this area of the law. Nevertheless, preemption is not the only means for determining whether a particular activity is exempt from local zoning regulation. We find the principles outlined in *County of Monroe* applicable to this case, such that the immunity afforded the towers should extend to the wireless providers' antennae.

government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities" (47 USC § 332 [c] [7] [A]). While the TCA may not limit a government's zoning ability, it does not dictate that a locality's regulations trump state interests where competing interests exist. Rather, consistent with *County of Monroe*, we conclude that any income the wireless providers derive from the antennae placed on the two towers does not subvert the underlying public interests served by the enhancement of wireless telecommunication, and such equipment is therefore embraced within the immunity already afforded to the state-owned towers pursuant to the balancing test.[4]

Accordingly, the order of the Appellate Division should be affirmed, with costs.

CIPARICK, J. (dissenting). Because I do not believe the exemption from local zoning regulation accorded to the state-owned telecommunications towers should be applied to the private telecommunications providers here, I respectfully dissent.

Placement of private wireless service facilities is ordinarily subject to local zoning requirements. This case differs from the typical scenario because the private providers locate their antennae on a state tower that is immune from local regulation. The issue before this Court is whether that immunity should be extended to benefit the private providers—allowing them immunity from local zoning simply because they opt to co-locate on a state, rather than a private, tower.

The City of New Rochelle Code contains zoning regulations specifically pertaining to telecommunications facilities (New Rochelle Code, ch 331, art IXA).* While the City understands the need for telecommunications services, it "finds that these regulations are necessary to protect the environmental, scenic

---

4. We emphasize that our determination that immunity is warranted in this case should not be taken as blanket authority for the placement of state-owned towers at any location the State desires. Here, after performing SEQRA review, DOT concluded that the towers would not have any adverse aesthetic or environmental impact based on their nature and location: one merely replaced an existing tower while the other was placed in a DOT maintenance yard. Moreover, Supreme Court, in applying the *County of Monroe* balancing test, found that the nature of the towers' locations did not weigh in the City's favor.

* The regulations cited were the regulations in effect at the time of the controversy. The provisions pertaining to wireless telecommunications facilities have been amended and now appear at section 331-99 (amended Jan. 15, 2002 by Ord. No. 21-2002).

and historical resources of the city and to ensure that adverse visual and operational effects will not contribute to blighting or deterioration of the surrounding neighborhood" (New Rochelle Code § 331-64.2). The Code states that shared use of existing towers (co-location) is favored (*see* New Rochelle Code § 331-64.4 [B]). The Code also provides that applications will be granted in order to fill in gaps in service (*see* New Rochelle Code § 331-64.4 [C]). The Code lists specific requirements for applicants seeking to co-locate on existing telecommunications facilities (*see* New Rochelle Code § 331-64.5).

The preliminary inquiry here should be whether the State has preempted this area so that local zoning does not apply. In *Incorporated Vil. of Nyack v Daytop Vil., Inc.* (78 NY2d 500 [1991]), we addressed whether the operator of a state-licensed residential substance abuse facility was subject to local zoning laws. We engaged in a preemption analysis to determine whether the Nyack Zoning Code was preempted by article 19 of the Mental Hygiene Law (*see Incorporated Vil. of Nyack,* 78 NY2d at 505). "Where the State has demonstrated its intent to preempt an entire field and preclude any further local regulation, local law regulating the same subject matter is considered inconsistent and will not be given effect" (*Incorporated Vil. of Nyack,* 78 NY2d at 505). The Court found that the Village had an important interest in regulating substance abuse facilities and that "separate levels of regulatory oversight [could] coexist" (*Incorporated Vil. of Nyack,* 78 NY2d at 507).

Here, the State has not preempted the field of regulating telecommunications facilities. The State Department of Transportation (DOT) does have statutory authority to lease property on or along special parkways—which include the Hutchinson River Parkway (*see* Transportation Law § 71 [2]; § 70 [2] [a]). In addition, the DOT Commissioner must also grant permits for any construction or improvements on a state highway right-of-way "notwithstanding any consent or franchise granted by any town or county superintendent, or by any other municipal authority" (Highway Law § 52). However, while the State does have some measure of control over development in these areas, it does not rise to the level of preemption.

The statutes do not explicitly limit local zoning authority and do not demonstrate any specific intent to preempt this area. Further, although the Commissioner has the authority to lease state highway property, the statute provides that development of such property "shall be subject to the zoning regulations and

ordinances of the municipality in which said property is located and to the support, protection or relocation of any public utility facilities within the right of way of any highways within said property" (Highway Law § 10 [38]). Thus, rather than preemption, the statute contemplates that state and local zoning regulation can coexist.

The federal Telecommunications Act of 1996 (TCA) (47 USC § 151 *et seq.*) also specifically preserves local zoning authority. The TCA states that the act will not limit local authority over the placement of private wireless service facilities with limited exceptions pertaining to regulations that are either discriminatory or prohibit service (*see* 47 USC § 332 [c] [7]; *see also* 47 USC § 253 [c]; *Chambers v Old Stone Hill Rd. Assoc.*, 1 NY3d 424, 433 [2004]; majority op at 168-169).

Absent state preemption, the City has a legitimate interest in regulating the placement of private wireless facilities within its borders, and the wireless carriers should have applied for a special permit through the City's Planning Board. Like *Incorporated Vil. of Nyack*, there is no proof that the City's regulations would be inconsistent with the State's ultimate goal of setting up a Statewide Wireless Network (SWN) (*see* 78 NY2d at 508). Thus, the City should be permitted to exercise its authority to regulate the placement of private wireless communications facilities.

Nor is there any other barrier to the application of local zoning law. The test articulated in *Matter of County of Monroe* (72 NY2d 338 [1988]) and adopted by the majority in this case, is inapplicable to this situation. The "balancing of public interests" test applies to disputes between "governmental units"—specifically whether an "encroaching governmental unit" will be subject "to the zoning requirements of the host governmental unit" (*see County of Monroe*, 72 NY2d at 343). By contrast, this case involves the interests of the municipality (New Rochelle) on the one hand and the interests of the commercial wireless providers on the other. As the majority notes, the immunity of the state towers is not at issue (*see* majority op at 165 n 2). As the Attorney General concedes, it is not at all clear that *County of Monroe* is applicable to the State—as the State is sovereign rather than a "governmental unit."

Even applying *County of Monroe*, there is no basis to cloak the private providers with the State's immunity. The factors to be weighed in the "balancing of public interests" test include

"the nature and scope of the instrumentality seeking immunity, the kind of function or land use involved, the extent of the public interest to be served thereby, the effect local land use regulation would have upon the enterprise concerned and the impact upon legitimate local interests" (*County of Monroe*, 72 NY2d at 343 [internal quotation marks and citation omitted]). Additional factors include "the applicant's legislative grant of authority, alternative locations for the facility in less restrictive zoning areas, and alternative methods of providing the needed improvement . . . [as well as] intergovernmental participation in the project development process and an opportunity to be heard" (*County of Monroe*, 72 NY2d at 343).

The State undeniably has an important interest in the SWN to improve State Police communications and in the Intelligent Transportation System (ITS) to improve the safety of travel. It also has an interest in improving 911 service. These interests apply to the utility of the towers in general—which is not at issue here. What is at issue here is whether state immunity should be conferred upon private providers.

The SWN is a prospective development in its planning stages. Thus, the primary use of the tower is currently private, making the majority of the benefits claimed to flow from the tower speculative. The type of land use involved is the placement of private wireless equipment—typically an area subject to regulation by localities. Indeed, such local regulatory authority is specifically preserved by the TCA. Here, there was a lack of intergovernmental participation as to whether the private providers should be permitted to co-locate on the towers.

Significantly, the majority fails to address what effect, if any, the local zoning regulation would have upon the proposed use. There is no indication that local zoning would conflict with these purposes. The New Rochelle Code reflects a preference for co-location—making the application procedure for shared use less rigorous than for a new tower (*see* New Rochelle Code §§ 331-64.5, 331-64.6). The City also has legitimate interests in regulating telecommunication facilities, such as "protect[ing] the appearance and property value of neighborhoods" as well as "protect[ing] the environmental, scenic and historical resources of the city and to ensure that adverse visual and operational effects will not contribute to blighting or deterioration of the surrounding neighborhood" (New Rochelle Code § 331-64.2). In addition, "once an area is sufficiently serviced by a wireless service provider, the right to deny applications becomes broader"

(*Sprint Spectrum L.P. v Willoth*, 176 F3d 630, 643 [2d Cir 1999]). There is no evidence that there were service gaps here that would have required the private providers to place their antennae in these particular locations. Here, given the primarily private use of the towers and the absence of any indication that the zoning provisions would conflict with state purposes, there is an insufficient basis upon which to apply the State's immunity to the private providers.

The majority also contends that profits from granting space to the private providers that "will ultimately aid in financing the construction of the State's telecommunications infrastructure plan" is a consideration in determining whether the private providers should benefit by the State's immunity (majority op at 167). To suggest that mere enhancement of the State's revenue is the sort of "public interest" that can justify exemption from local regulation can lead to abuses if taken to an extreme.

Nor should the private providers be considered an accessory use, such as "[t]he airport terminal, parking facilities, and air freight facility" in *County of Monroe* (72 NY2d at 345). The Court determined those uses were accessory to the airport and should benefit by immunity, deeming them "customarily incidental to an airport operation" (*County of Monroe*, 72 NY2d at 345). Here, the primary use of the towers is commercial and the SWN is a speculative future project. The private providers are engaged in their ordinary business which could be conducted on any tower—whether state or private. While the private providers may confer a benefit, the tower could function without them. Thus, these do not appear to be the type of accessory uses contemplated by *County of Monroe*.

It is also persuasive that the parties provided for compliance with local zoning requirements in the "Tower License Agreement" between Crown and the private providers. The agreement states that "[t]he access to, and installation, maintenance and operation of, Licensee's Site Equipment must at all times be in strict compliance with the Technical Standards, all applicable federal, state and local laws, ordinances, and regulations (including without limitation the FCC, Federal Aviation Administration, zoning, building and fire codes) . . . ."

The State's conduct essentially amounts to selling its immunity from zoning regulations. This particular conduct was rejected by this Court in *Little Joseph Realty, Inc. v Town of Babylon* (41 NY2d 738, 742 [1977]) and by the Southern District

in *Omnipoint Communications, Inc. v Common Council of City of Peekskill* (202 F Supp 2d 210, 225 [SD NY 2002] ["Nongovernmental uses, such as the lease of space to private corporations for the construction of a personal wireless service facility, are not immune from local zoning requirements"]). *Little Joseph* concededly relied upon the since-rejected governmental-proprietary function distinction. However, the premise that a government entity should not be permitted to sell its own immunity from local zoning regulations to private parties remains valid.

The State's immunity from local zoning requirements should not be extended to the private providers. The State has not preempted this area and there is no indication that the local zoning regulations would conflict with the State's purposes. Thus, I would reverse the order of the Appellate Division and reinstate the order of Supreme Court.

Judges G.B. Smith, Rosenblatt and Read concur with Judge Graffeo; Judge Ciparick dissents and votes to reverse in a separate opinion in which Chief Judge Kaye and Judge R.S. Smith concur.

Order affirmed, with costs.