OPINION OF THE COURT
Geoffrey J. O’Connell, J.
Plaintiff Town of Hempstead seeks an order granting it a preliminary injunction prohibiting the defendants from further *1041 constructing or operating a cell site tower in Wantagh, New York. Defendants oppose and seek a dismissal of this action.
This action arises out of the construction of a cell site tower by defendant Crown Communications, on state property. It is apparently undisputed that in 2001 the Town contacted state officials about the placement of the tower on state property located at the south end of the Seaford Oyster Bay Expressway, in Wantagh, New York. This inquiry was made after residents of the community objected to a tower being constructed on top of a commercial building located in a residential neighborhood.
The State contends that after consulting with Crown and notifying the Town, it permitted such construction, completing the proper state environmental studies. The construction began on state-owned land at the southwest intersection of the Sea-ford Oyster Bay Expressway and Sunrise Highway. The Town claims that it was under the belief that the construction was to be placed at the northwest corner, further away from the residential neighborhood. The Town claims that it approached the defendants to persuade them to move the tower but that they refused.
The Town now brings this application to stop the construction of the tower contending that even though the construction takes place on state land, it is subject to town zoning provisions, and there is no proof that the defendants have met such requirements. The Town notes that the local residents have complained about this proposed site.
The State and Crown oppose the application arguing that the zoning provisions do not apply to this construction, and in addition, the Town was fully notified of the location sited for the tower and it did not object in a timely fashion. They seek summary judgment dismissing the complaint and further prohibiting the Town from proceeding on its stop work order.
The defendants seek a stay of enforcement of the Town’s zoning laws with respect to the tower. The State argues that due to its ongoing notice of the project, the Town’s request should be denied as time-barred both in law and equity, and for a failure to state a cause of action. They seek an order declaring the Town’s stop work order void and of no force and effect and an order permanently enjoining the Town from enforcing it as against these defendants with respect to this construction.
It is apparently undisputed that in July 2001 the Town contacted the State with respect to the construction of a cell phone tower in the general vicinity of the one currently in *1042 dispute. The Town had received an application for permission to construct a tower on the roof of a commercial building in Wantagh. The Town asked the State if it would permit construction on state-owned property located near the Sunrise Highway/ Seaford Oyster Bay Expressway. The State contends that the Town made this request in order to avoid a request for a variance to permit construction in a residential area. The State claims that the Town did not request any specific parcel of its property for such construction. It notes the written request received from the Town in August 2001. The State notified the Town that it was forwarding the request to Crown for its input, and for input into which parcel of land should be used.
The State contends that the State Department of Transportation’s (DOT) Design, Planning, Traffic and Maintenance Group recommended against the tower being constructed within 110 feet of the Long Island Railroad elevated tracks. It also recommended against construction in the northwest quadrant of the intersection area due to a scheduled realignment of ramps in that area. DOT recommended the southwest quadrant, subject to DOT approval of all plans and final approval.
In early 2002 the state DOT received plans for the proposed construction of the tower from Crown, confirming that subject to the State’s approval, Crown’s contractors would construct the tower within the southwest quadrant property. On or about July 5, 2002, Crown’s engineers sent a fax to the Town’s engineering department detailing the need for the Town to issue a tax map identifying the address of the planned location of the tower. This fax included a narrative description of the proposed location for the tower and four maps showing its location.
The State did not initiate any further contact with the Town during its review of the plans.
On February 5, 2003 the State hand delivered a letter to the town attorney wherein it stated that the DOT was the lead agency currently reviewing an environmental site assessment for the installation of the tower in the southwest quadrant. This letter included copies of the Long-Form Environmental Assessment Form Part 1, construction drawings and site plans and photo simulations of the proposed construction. It sought any feedback from the Town to be made within 15 days. There was no response from the Town. On March 21, 2003 the DOT sent the Town a copy of its State Environmental Quality Review Act (SEQRA) negative declaration. There was no response from the Town.
*1043 Thereafter on June 6, 2003 the DOT issued a work permit to Crown authorizing the start of construction. On June 27, 2003 the state DOT received a letter from the town supervisor and local councilwoman informing them of residents complaints regarding the commencement of construction and in which they state that “we have no jurisdiction of the New York State Department of Transportation . . . .” It also requested that the State and Crown cease construction. On November 12, 2004, Crown notified the State that it was going forward with construction, and that the tower was installed on November 14, 2004. On November 16, 2004 the Town again requested an immediate stop to construction, and subsequently on November 18, 2004 it issued the subject stop work order.
On November 23, 2004, the state DOT wrote to the Town stating that it was of the opinion that the Town had no jurisdiction over this construction pursuant to an agreement between the State and Crown which is not subject to local zoning requirements.
The Town commenced this action on December 2, 2004.
The Town argues that the State is not immune from its regulations. The State disagrees and argues that the Court of Appeals has now clearly stated that, under these circumstances, the State is not subject to such local regulations. (Crown Communication N.Y. v Department of Transp. of State of N.Y., 309 AD2d 863 [2d Dept 2003].)
In Crown Communication N.Y. v Department of Transp. of State of N.Y. (supra), the State and Crown proceeded to construct a cell phone tower within the City of New Rochelle. The City issued a stop work order contending that the tower was subject to the City’s zoning regulations and special permit requirements. The Second Department disagreed, declaring that the related commercial wireless telecommunications providers were not subject to zoning regulations.
In February, the Court of Appeals affirmed the decision of the Appellate Division. The Court determined that the State and the private entity are exempt from such local regulations where, such as here, there is a shared use and benefit to the construction involved. (Crown Communication N.Y. v Department of Transp. of State of N.Y., 4 NY3d 159 [2005].)
Both the State and Crown argue that state-owned telecommunications towers with commercial wireless telecommunications antenna attachments that are constructed on state land *1044 by the State through its agent, Crown, are immune from local zoning regulation where the balancing of public interests test set forth in Matter of County of Monroe (City of Rochester) (72 NY2d 338 [1988]) tips in favor of immunity.
The Town argues that the State’s actions in this instance differ from its actions in Crown, as in that case the tower constructed was merely replacing one which previously existed, and the other was placed in a state DOT maintenance yard. In this instance the tower is new construction. The Town notes that the Court of Appeals clearly stated that its decision was not to be taken as blanket authority for the placement of state-owned towers at any location that the State desires. The Town argues that the local residents have complained that it is an eye sore in a residential area, and constructed in open green space, changing the appearance of the area to an industrial one. The Town also argues that an alternative site for the tower has been suggested, that being the northwest interchange, which is further away from the residential area.
Here, as in Crown, there is evidence that the State performed a SEQRA review to determine that the tower would not have any adverse aesthetic or environmental impact based on its location. There is no indication that the residents stated an objection to the siting of the tower at that time.
Based on the decision of the Court of Appeals and the facts set forth in this record, the court has no choice but to grant the State’s application. The Court of Appeals has made it clear that the State may take the lead in these determinations, and due to the fact that the local residents may benefit from the placement of a communications tower in this location, the State and its contractor, Crown, are not subject to the local permit regulations. Under the balancing test as set forth in County of Monroe (supra) and Crown (supra), the defendants have submitted evidence of numerous benefits the government’s use of the towers would afford the public, including enhancement of the 911 emergency calling from cellular phones. The State has noted that the parcel preferred by the Town is not viable as to a previously planned road construction project, further the record demonstrates that the Town had an opportunity to submit objections to the plan during the SEQRA review. Here, as in County of Monroe, the fact that private wireless providers will benefit from the construction of the tower does not undermine public interests.
With respect to the Town’s application for injunctive relief, that application must be denied. In order to obtain a prelimi *1045 nary injunction, a movant must establish (1) a likelihood of success on the merits; (2) irreparable injury absent the injunction; and (3) a balance of equities favors her position. (Miller v Price, 267 AD2d 363 [2d Dept 1999].) In order to obtain that relief plaintiff has to demonstrate the potential merits of its causes of action. Plaintiffs proof fails.
A preliminary injunction is a drastic remedy which is to be used sparingly, and should not be issued where the legal remedy is satisfactory. (Orange & Rockland Util. v Amerada Hess Corp., 67 Misc 2d 560 [1971]; Gaynor v Rockefeller, 15 NY2d 120 [1965].) In this instance there is no likelihood of success on the merits, and a balance of the equities favors the defendants, as it is clear that all parties wanted a tower built, there are likely shared benefits from its construction and there was a delay in opposing this siting of the tower despite notice of town representatives.
Based on the proof presented the court finds plaintiff has failed to establish that it is entitled to the relief sought; thus the application for a preliminary injunction is denied. (CPLR 6301.) The defendant’s motion to dismiss is granted.