TOWN OF HEMPSTEAD, Appellant, v STATE OF NEW YORK et al., Respondents. [840 NYS2d 123]—

In an action to permanently enjoin the defendants from violating certain zoning ordinances of the Town of Hempstead, the plaintiff appeals from an order of the Supreme Court, Nassau County (O'Connell, J.), dated June 16, 2005, which denied its

motion for a preliminary injunction and granted the cross motion of the defendants State of New York and Department of Transportation of the State of New York, in which the defendant Crown Communication New York, Inc., joined, for summary judgment dismissing the complaint.

Ordered that the order is affirmed, with one bill of costs to the respondents appearing separately and filing separate briefs.

In 1997 the State of New York entered into a Telecommunications Site Manager Agreement (TSMA) with Castle Tower Holding Corporation. Pursuant to the TSMA, the State granted Castle an exclusive license to construct, market, install, maintain, and operate wireless communication facilities upon State-owned land at sites to be determined by Castle and approved by the State. The State had the sole and final authority to approve any new sites and reserved the right to install its own telecommunications equipment at any site. Castle subsequently assigned its rights under the agreement to the defendant Crown Communication New York, Inc. (hereinafter Crown).

In 2003 the Department of Transportation of the State of New York (hereinafter the DOT) advised the Town of Hempstead that it was reviewing an environmental site assessment for installation of a cellular communications tower by Crown in the southwest corner of State-owned property located within the Town near the intersection of the Seaford-Oyster Bay Expressway and the Sunrise Highway. The DOT provided the Town with the environmental assessment form and site plans for the facility and invited the Town to comment within 15 days. No comment from the Town was received.

In March 2003 the DOT completed the process required under the State Environmental Quality Review Act (ECL art 8, hereinafter SEQRA) and issued a negative declaration, which concluded that constructing the tower on the southwest quadrant of the property would not impair the aesthetics of the community or the neighborhood character. The Town did not respond to the negative declaration, and work on the tower began. Thereafter, in response to local concerns, the DOT halted construction for more than one year. However, in November 2004 Crown erected the tower on the southwest quadrant of the property.

In December 2004 the Town commenced this action against the State and the DOT (hereinafter collectively the State) and Crown, seeking to permanently enjoin them from constructing and maintaining the tower, based upon violation of local zoning ordinances. The Town then moved to preliminarily enjoin opera-

tion of the facility. In response, the State cross-moved for summary judgment dismissing the complaint on the grounds that the action was time-barred and that the Town failed to state a cause of action. The State argued that there was a serious gap in wireless communication coverage in the area, and that the safety concerns of all citizens of the Town took precedence over the desires of the few residents opposing the tower. In support of the State's motion, Crown argued that application of the balancing test enunciated in the case of *Matter of County of Monroe (City of Rochester)* (72 NY2d 338 [1988]) clearly required that the project be afforded immunity from local regulation. The Supreme Court granted the cross motion for summary judgment dismissing the complaint. We affirm.

In *Matter of County of Monroe (supra)*, the Court of Appeals addressed the applicability of local zoning laws where a conflict exists between two governmental agencies. The Court therein articulated "a balancing of public interests" test which requires the consideration of various factors in order to determine whether an entity should be granted immunity from local zoning requirements (*Matter of County of Monroe*, 72 NY2d at 341). These factors include "the nature and scope of the instrumentality seeking immunity, the kind of function or land use involved, the extent of the public interest to be served thereby, the effect local land use regulation would have upon the enterprise concerned and the impact upon legitimate local interests" (*id.* at 343). While *County of Monroe* involved two governmental agencies, the Court has made it clear that a private entity may share in the immunity accorded to the State if the result of the balancing test is in the State's favor (*see Matter of Crown Communication N.Y., Inc. v Department of Transp. of State of N.Y.*, 4 NY3d 159 [2005], *cert denied sub nom. City of New Rochelle, N.Y. v Crown Communication N.Y., Inc.*, 546 US 815 [2005]).

The Supreme Court properly employed the "balancing of public interests" test and correctly determined that the State-owned telecommunications tower at issue is immune from local zoning laws (*see Matter of Crown Communication N.Y. v Department of Transp. of State of N.Y., supra*). Contrary to the opinion of our dissenting colleague, the balancing test factors considered herein do weigh in favor of the State, and this determination does not mean that immunity is a foregone conclusion in every similar case wherein it is sought. In particular, we note that even assuming that the Town is correctly contending that the subject tower is more visible from the surrounding residences than the negative declaration pursuant to SEQRA states, this factor does not outweigh the public benefits which are gained

from more widespread cellular coverage in the subject area (*see Matter of Crown Communication N.Y. v Department of Transp. of State of N.Y.*, 309 AD2d 863 [2003], *affd* 4 NY3d 159 [2005], *supra*). In any event, the tower is not located in a residential community, but rather inside a highway entrance ramp. Moreover, the DOT advanced legitimate reasons for not locating the tower on a different portion of the property, including the fact that the alternative location is impermissibly close to Long Island Rail Road tracks, and that it would interfere with a scheduled realignment of nearby highway ramps. The aerial photograph submitted by the Town is insufficient to rebut the opinions of the DOT planners that such considerations militated against siting the tower in that location.

We further note that the mere fact that the tower is approximately 250 feet from residential homes does not mean that the SEQRA negative declaration is incorrect (*see generally Matter of Cellular Tel. Co. v Rosenberg*, 82 NY2d 364 [1993]; *Matter of Nextel Partners v Town of Fort Ann*, 1 AD3d 89 [2003]). In any event, the Town failed to timely challenge the findings of the negative declaration, including the conclusion that the tower would not have a negative aesthetic impact (*see generally, Matter of Town of Babylon v New York State Dept. of Transp.*, 33 AD3d 617 [2006]).

Accordingly, in view of the negative declaration and the balancing factors which favor immunity, the Supreme Court properly concluded that the State was entitled to summary judgment dismissing the complaint. As summary judgment was properly granted to the State and Crown, the Town had no likelihood of success on the merits and thus its motion for a preliminary injunction was properly denied (*see First Franklin Sq. Assoc., LLC v Franklin Sq. Prop. Account*, 15 AD3d 529 [2005]).

The Town's remaining contentions are without merit. Miller, J.P.,Santucci and Florio, JJ., concur.

Lifson, J., dissents and votes to reverse the order appealed from, deny the defendants' cross motion for summary judgment dismissing the complaint, and grant the plaintiff's motion for a preliminary injunction, with the following memorandum:

In order for the defendants to be exempt from the Town of Hempstead's local zoning requirements, the Supreme Court is required to perform the "balancing of public interests" test as established by the Court of Appeals in *Matter of County of Monroe (City of Rochester)* (72 NY2d 338, 341 [1988]). The factors considered in the balancing test are: "the nature and scope of the instrumentality seeking immunity, the kind of function or

land use involved, the extent of the public interest to be served thereby, the effect local land use regulation would have upon the enterprise concerned and the impact upon legitimate local interests . . . the applicant's legislative grant of authority, alternative locations for the facility in less restrictive zoning areas . . . alternative methods of providing the needed improvement . . . intergovernmental participation in the project development process and an opportunity to be heard" (*id.* at 343 [internal quotation marks omitted]). While no factor is controlling, one factor may be of significantly greater influence so as to overshadow all others factors (*id.*).

Private entities contracting with the State are not precluded from sharing in the immunity accorded to the State provided the *Monroe* balancing test is satisfied (*see Matter of Crown Communication N.Y., Inc. v Department of Transp. of State of N.Y.*, 4 NY3d 159 [2005], *cert denied sub nom. City of New Rochelle v Crown Communication N.Y., Inc.*, 546 US 815 [2005]). While in *Crown* the Court held that the factors weighed in favor of immunity, it emphasized that its determination was not "blanket authority for the placement of state-owned towers at any location the State desires" (*id.* at 169 n 4). The present case is exactly the type of case envisioned by the Court in which the localities' land use plan might be invoked. To hold otherwise would effectively end any semblance of the test. Indeed, it is difficult to envision a stronger case for the denial of immunity. The determination of the majority will inescapably lead to the granting of immunity in every case in which it would be sought, a result expressly prohibited by *Monroe* and *Crown*.

Contrary to the analysis employed by the majority, upon evaluation of the balancing test factors it is clear they weigh heavily in favor of applying the Town's zoning requirements. Most significantly, the present case is distinguishable from *Crown*, because the plaintiff here does not seek to prohibit the placement of the tower but, rather, requests only that the tower be moved a short distance within the proposed location to a quadrant which is more appropriate and more protective of the character and nature of the Town. Thus, the public benefit received from the placement of the communication tower is a nonissue because such benefit will be equally realized with the placement of the tower in either of the two quadrants.

Further, the SEQRA review incorrectly found no negative aesthetic impact on the area surrounding the southwest quadrant in which the tower was to be placed. The location of the 120-foot tower within the southwest zone is less than 250 feet from the adjoining residential homes. However, locating the

tower in the requested northwest quadrant would significantly decrease its visibility to nearby neighborhoods since the closest homes would be more than 500 feet away.

The defendants, in seeking immunity from the Town's zoning authority, have the burden of proof. Besides the illusory conclusions that a tower must be situated further than 110 feet from elevated LIRR tracks and the scheduled realignment of ramps in the northwest quadrant, the defendants failed to submit any evidence that locating the tower in this quadrant was an unacceptable alternative location for the tower. In fact, examination of aerial photographs suggests ample room for the placement of the tower at a distance greater than 110 feet from the railroad tracks within the northwest quadrant.

For all of the foregoing reasons I would reverse the order of the Supreme Court, deny the defendants' cross motion for summary judgment, and grant the plaintiff's motion for a preliminary injunction. I respectfully dissent. [*See* 9 Misc 3d 1040 (2005).]